STATE of Wisconsin, Plaintiff-Respondent,

v.

Joel S. FLAKES, Defendant-Appellant.†

Court of Appeals

*No. 86–1248–CR. Submitted on briefs April 7, 1987.—Decided June 12, 1987.*

(Also reported in 410 N.W.2d 614.)

† Petition to review denied.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

For the defendant-appellant the cause was submitted on the briefs of *Crawford Law Firm,* with *Robert C. Crawford* of counsel.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Joel S. Flakes appeals from a judgment of conviction and an order denying postconviction relief. Flakes was found guilty of second-degree murder and second-degree sexual assault, contrary to secs. 940.02(1) and 940.225(2)(e), Stats. Flakes raises three issues on appeal: (1) the trial court erred when it allowed the state to amend the information to conform to the proof; (2) there was insufficient evidence to convict on second-degree murder; and (3) the warrantless search by his parole agent was illegal. We affirm on all three issues because we conclude that the trial court did not misuse its discretion when it amended the information, there was sufficient evidence to convict on second-degree murder and the search was not illegal.

Flakes, a parolee, was arrested for selling marijuana to an undercover police officer. Police sought permission to search his apartment but he denied such permission. Two days later the police told Flakes' parole agent of the new arrest. The agent searched Flakes' apartment and discovered the nude body of a fourteen-year-old boy in the closet.

Flakes made an oral and written confession in which he admitted killing the boy while the two were engaged in anal intercourse. The case was tried to the court. A verdict of guilty of second-degree murder and second-degree sexual assault and not guilty on three other counts was returned. Flakes was sentenced to forty-six years. All relief sought through a post conviction motion was denied.

## AMENDMENT TO THE INFORMATION

Flakes first contends that the amendment to the information was error. After the close of the state's evidence, the defense moved to dismiss the entire information. Flakes explained that the state had failed to prove second-degree sexual assault with a person whom Flakes knew to be unconscious, contrary to sec. 940.225(2)(d), Stats. The state then moved to amend the information to charge second-degree sexual assault, sexual contact or sexual intercourse with a person over twelve years of age and under sixteen years of age, contrary to sec. 940.225(2)(e), Stats., to conform to the proof and the statutory language used in the charging documents.[1] The court ruled that the state could amend to charge sec. 940.225(2)(e).

Under sec. 971.29(2), Stats., the court may allow amendment of the information to conform to the proof where such amendment is not prejudicial to the defendant. It is within the trial court's discretion to allow such an amendment to the information. *See State v. Wickstrom,* 118 Wis. 2d 339, 347–49, 348 N.W.2d 183, 188–89 (Ct. App. 1984). A trial court's decision to allow an amendment will not be reversed in the absence of a clear or manifest misuse of discretion. *See J.F. Ahern Co. v. Wisconsin State Bldg. Comm'n,* 114 Wis. 2d 69, 85, 336 N.W.2d 679, 686 (Ct.

---

[1]Count two of the criminal information, which was identical to the criminal complaint, reads as follows:

*Count 02 Second Degree Sexual Assault.* On or about January 26, 1985, at 3431 W. Kilbourn, Apartment #1, City of Milwaukee, did have sexual intercourse with [the victim], age 14, with a date of birth of 9–26–70, contrary to Wisconsin Statutes section 940.225(2)(d).

App. 1983). If the record shows that discretion was exercised and a reasonable basis exists for trial court's ruling, we will sustain it. *Id.,* 336 N.W.2d at 686–87.

■ Flakes contends that the amendment did not conform to the proof and that the amendment was prejudicial. We first consider Flakes' argument that the amendment did not conform to the proof. Flakes claims that the entire thrust of the evidence offered by the state was to prove a violation of sec. 940.225(2)(d), Stats. We disagree. The trial court found that:

> The State has proven beyond a reasonable doubt based on all the evidence in this case and especially upon the defendant's own statement corroborated by the physical evidence on [the victim's] body, that the defendant did have sexual intercourse, penis to anus, with [the victim] who was 14 years of age at the time of sexual intercourse.

The proof in the case included evidence of the victim's age, and that the defendant had sexual intercourse with him. Therefore we conclude as a matter of law that the amendment conformed to the proof.

■ The trial court properly allowed the information to be amended to state the correct statutory citation after it found that Flakes had actual notice of the crime charged from the description of the offense contained in the complaint and the information. An amendment to correct an incorrect statutory citation is permissible if the original information enables the defendant to understand the offense charged, so that he can prepare his defense. *Wagner v. State,* 60 Wis. 2d 722, 728–29, 211 N.W.2d 449, 453 (1973). An information which miscited the statutory reference was suffi-

cient where it verbally described the violation and the defendant could not have been misled or prejudiced by the incorrect statutory reference. *Id.* at 729, 211 N.W.2d at 453. The rule in Wisconsin is that the trial court may allow amendment of an information at any time in the absence of prejudice to the defendant. *Id.* at 726, 211 N.W.2d at 452.

In this case, the trial court stated that:

> It is clear from reading the information and complaint that the State intended to charge the defendant with the crime of sexual intercourse with the person under the age of 16 years, contrary to Wisconsin Statutes section 940.225 sub. (2) sub. (e). Although defense counsel argues the prosecutors add all sorts of surplusage to charging documents, that is not this Court's experience. In addition, it is clear the State in no way alleged the defendant had sexual intercourse with a person who the defendant knew to be unconscious. The State never used that language in the complaint or in the information. There is no doubt that the State charged the defendant with having sexual intercourse with a child under the age of 16 and that the statutory reference was either a typographical or drafting error.
>
> . . . .
>
> The Court finds that everyone, including the defense, knew the State intended to proceed under the subsection that charges the defendant with having sexual intercourse with a child under the age of 16, but the defense is not, quote, unquote, "surprised" by the State's motion to amend now, now that it's aware of the typing error and that the defense has not relied to its detriment in any way upon the State's error.

We agree with the trial court's conclusion that Flakes had notice of the actual charge and that it was a typographical or drafting error. The trial court correctly exercised its discretion when it allowed the amendment.

Flakes asserts that he was prejudiced by the amendment. We disagree.

The trial court found that:

> there was no prejudice to the defense in the amendment of that particular typing error at the close of the trial. The defense cites as prejudice the rejection of the plea bargain that was offered. I'm not sure that rejection of a plea bargain was in fact prejudice, but even if it was prejudice, the exposure the defendant faced after the trial was less than the plea bargain offered, so the defendant benefited by having tried the case despite the Court's refusal to find for the defendant on count two. There is no showing by the defense that the trial would have been handled in any different way under sub. (e) than sub. (d), that there would have been any other witnesses, any other defenses, any other strategic decisions that would have been made during the course of the trial other than the ones that were made.

■ The purpose of a charging document is to inform the defendant of the acts he allegedly committed and to allow him to understand the offense charged so that he can prepare a defense. *Wickstrom,* 118 Wis. 2d at 348, 348 N.W.2d at 188. The key factor in determining whether an amended charging document prejudiced the defendant is whether the defendant had notice of the nature and cause of the accusations against him. *Id.* at 349, 348 N.W.2d at 189. There is no prejudice when the defendant has such notice. *Id.*

Flakes has never claimed that he had a viable defense against the charge of sexual contact or intercourse with a minor or that he failed to present such a defense because he did not realize age was an issue. The only prejudice he has asserted is the fact that he rejected a plea bargain because he believed the state would not be able to prove the unconsciousness element of the sexual assault charge. In *Wickstrom* the court rejected the defendant's argument that an amendment prejudiced him because it doubled the maximum penalty he faced. The court concluded that Wickstrom's ability to defend himself was not adversely affected. *Id.* at 348–49, 348 N.W.2d at 188–89. Similarly in this case, Flakes' ability to defend himself was not prejudiced by the amendment. Therefore we conclude as a matter of law that Flakes was not prejudiced by the amendment. Since there was no error of law, the trial court properly exercised its discretion when it allowed the amendment to the information.

Flakes further contends that the application of sec. 971.29(2), Stats., is unconstitutional under both the state and federal constitutions. We disagree. We hold that he had actual notice of the charge of sexual contact or intercourse with a person over twelve and under sixteen years of age and that he was not denied any constitutional rights.

The determination of whether Flakes was deprived of his constitutional rights presents a question of constitutional fact: whether Flakes had actual notice of the charge so as to comport with constitutional guarantees. Deference is given to the trial court's findings of evidentiary or historical facts, but not to the ultimate conclusion of constitutionality. *State v.*

*Woods,* 117 Wis. 2d 701, 715–16, 345 N.W.2d 457, 465 (1984), *writ of habeas corpus granted on other grounds. Woods v. Clusen,* 605 F. Supp. 890 (E.D. Wis. 1985), *aff'd* 794 F.2d 293 (7th Cir. 1986). After reviewing the trial court's findings of evidentiary facts, we conclude as a matter of law that Flakes had actual notice of the crime with which he was charged and that there was no violation of his state or federal constitutional rights.

Flakes' first contention is that he was denied his right "to demand the nature and cause of the accusation against him" under Wis. Const. art. I, sec. 7. Flakes claims that *Roth v. State,* 180 Wis. 573, 576, 193 N.W. 650, 651 (1923) requires that he was "entitled to know the offense of which he was charged."

We agree with the trial court that the charging document gave the defendant actual notice of the fact that he was charged with sexual intercourse with a person under the age of sixteen and over twelve. The actual wording of the complaint set forth the elements of that charge and made no reference to unconsciousness even though it cited to sec. 940.225(2)(d), Stats., which includes the element of unconsciousness. There was no allegation by the state in the probable cause section of the complaint as to unconsciousness and there was no proof of unconsciousness at the preliminary hearing.

Unlike *Roth,* where the defendant was accused of one offense and convicted of another of which he was not apprised by the information filed, Flakes had actual notice of the true charge against him and had the opportunity to defend against that charge. We note that Flakes has not claimed that he had a viable defense to the charge of sexual assault with a person

fourteen years old or that he failed to present such a defense because he did not realize age was an issue. We refuse to conclude Flakes had no actual notice of the charge, when he knew there was a typographical error and made a tactical decision to proceed based on that error on the gamble that the court would not permit an amendment. This is not a case where the defense was unaware of a typographical error and relied on the incorrect statutory citation to present his case. Flakes was not denied his rights under art. I, sec. 7 of the state constitution.

We conclude, for similar reasons, that Flakes was not denied his right to due process under either the state or the federal constitution. Flakes argues that Wis. Const. Art. I, sec. 8, which states that "[n]o person may be held to answer for a criminal offense without due process of law," requires that trial proceedings be fundamentally fair. Flakes also relies on the due process clause of the federal constitution. Since the due process clause of the state constitution is essentially the same as the federal due process clause, *State v. Cissell*, 127 Wis. 2d 205, 223, 378 N.W.2d 691, 699 (1985), *cert. denied,* 106 S. Ct. 1651 (1986), we will consider the claim as one.

■
Due process guarantees a criminal defendant the right to notice of the specific charge and a chance to be heard in a trial of the issues raised by that charge. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948). Because we hold that Flakes had *actual notice* of the correct charge, even though the citation was incorrect, we conclude he was provided with the due process right to notice and the opportunity to defend against that charge. The written part of the criminal complaint, as well as the information, informed Flakes of the exact

422

nature of the charge. None of the cases cited by Flakes involve such a situation or support a holding to the contrary. Flakes was not deprived of notice and the opportunity to be heard and, therefore, his constitutional rights were not violated.

## SUFFICIENCY OF THE EVIDENCE

Flakes' second claim of error is that there was insufficient evidence to convict him on the greater offense of second-degree murder. He argues that the court should have acquitted him on the greater offense of second-degree murder and convicted him on the lesser included offense of homicide by reckless conduct, contrary to sec. 940.06, Stats. We disagree. We conclude that there was sufficient evidence to prove beyond a reasonable doubt that Flakes was guilty of second-degree murder.

The standard of review on questions of sufficiency of the evidence is as follows:

> "This court must affirm if it finds that the jury, acting reasonably, could have found guilt beyond a reasonable doubt. The function of weighing the credibility of witnesses is exclusively in the jury's province, and *the jury verdict will be overturned only if, viewing the evidence most favorably to the state and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt.*" ... [W]e will not substitute our judgment for that of the jury unless, under all the evidence presented, the jury *could not* have found guilt beyond a reasonable doubt.

*State v. Serebin,* 119 Wis. 2d 837, 842–43, 350 N.W.2d 65, 68 (1984) (citations omitted and emphasis in original). The test is the same, whether trial is to a jury or to the court. *Gauthier v. State,* 28 Wis. 2d 412,

416, 137 N.W.2d 101, 103 (1965), *cert. denied,* 383 U.S. 916 (1966).

■

The crime of second-degree murder has three elements: 1) the defendant's conduct was imminently dangerous to another; 2) the defendant's conduct was of such a character that it evinced a depraved mind, regardless of life; and 3) the defendant's conduct caused the death of the victim. *Turner v. State,* 76 Wis. 2d 1, 9–10, 250 N.W.2d 706, 711 (1977). Flakes asserts that the state did not prove imminently dangerous conduct.

The pathologist testified that the victim died of asphyxia due to ligature strangulation. The pathologist also testified that the actions of choking were probably continuous motions for at least thirty seconds and probably two or three minutes. Also, she testified that when she examined the body a sock was loosely tied around the mouth, and the hands were tied together with socks, as were the ankles.

Flakes argues that his conduct was not imminently dangerous because there was no evidence that the placement of a soft ligature around the neck of the victim was in and of itself dangerous. What is important, however, is whether the conduct *under the circumstances of the case* was imminently dangerous. *Wagner v. State,* 76 Wis. 2d 30, 44–45, 250 N.W.2d 331, 337 (1977).

■

The circumstances here include the placing of a ligature around the victim's neck for a period of time, in a manner sufficient to cause hemorrhage of the eyes and neck muscles, a continuous discoloration of the skin around the neck, and death by asphyxiation. This occurred during a sexual act in which Flakes was

highly excited and did not know how tightly he was holding the victim. The defendant's act of strangling the victim with a soft ligature during a sexual act was by its nature dangerous. The fact that it may be possible to apply a ligature in a manner which is not dangerous to life does not alter the fact that the trier of fact could reasonably conclude that under these circumstances the conduct was imminently dangerous. The victim's death may not have been expected or intended by Flakes, but that does not alter the degree of danger in which he chose to place the victim by his conduct. *See Turner,* 76 Wis. 2d at 14, 250 N.W.2d at 713.

Flakes also confessed to holding the victim down by holding him around the neck in several positions. Flakes' former roommate testified that in similar circumstances he had protested to Flakes about being choked. Thus, Flakes was aware of the dangerousness of those activities when he engaged in them with the victim. Under the test of *Serebin,* we conclude that a trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

## SEARCH BY PAROLE AGENT

The final issue is whether the warrantless search by the parole agent was legal. We are bound by *State v. Griffin,* 131 Wis. 2d 41, 46, 388 N.W.2d 535, 536 (1986), *aff'd,* 107 S. Ct. 3164 (1987), which held that a probation officer may search a probationer's residence without a warrant if he has reasonable grounds to believe that the probationer has contraband. We conclude that the search by the parole agent was based on reasonable grounds, and was therefore constitutional.

We first note that the holding of *Griffin* applies to parolees as well as to probationers. The court in *Griffin* held that the "reasonable grounds" standard of Wis. Adm. Code, sec. HSS 328.21(3)(a), meets the constitutional standard of reasonableness.[2] *Griffin,* 131 Wis. 2d at 61, 388 N.W.2d at 542. This section of the Administrative Code pertains to parolees as well as probationers. Additionally, the cases relied upon in *Griffin* either fail to distinguish between probation or parole status or treat them the same. *Griffin,* 131 Wis. 2d at 53 n. 4, 388 N.W.2d at 539 n. 4. The court stated that "there is ample authority for the viewpoint that probation or *parole* officers may conduct warrantless searches of a probationer's or *parolee's* residence." *Id.* at 52, 388 N.W.2d 539 (emphasis added).

Whether a search is reasonable is a question of constitutional fact, which we review independent of the trial court's conclusion. *Id.* at 62, 388 N.W.2d at 543. The trial court's findings of evidentiary or historical facts will not be upset upon appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Id.*

We first consider whether this was a police search. *See id.* at 63, 388 N.W.2d at 543. The trial court found that there was no credible evidence to find that the parole agent "was a stalking horse or agent for the Milwaukee Police Department." We agree with the trial court's conclusion that there is no evidence in

---

[2]The search of Flakes' apartment occurred in 1985. Wis. Adm. Code, sec. HSS 328.21, was repealed and recreated, effective May 1, 1986. Since only minor substantive changes were made to the rule in existence on the date of the search, we will cite to the new rule. *See Griffin,* 131 Wis. 2d at 60 n. 7, 388 N.W.2d at 542 n. 7.

the record that this was a police search. Furthermore, a reasonable search should not be deemed unlawful merely because the police provide the information that leads to the search. *Id.* at 57, 388 N.W.2d at 541.

We also must review the considerations set forth in Wis. Adm. Code, sec. HSS 328.21(6), to determine whether the parole agent had reasonable grounds to conduct a warrantless search of Flakes' apartment. *Griffin,* 131 Wis. 2d at 63–64, 388 N.W.2d at 544. Under sec. HSS 328.21(3)(a) a search of a client's living quarters may be conducted "if there are reasonable grounds to believe that the quarters ... contain contraband." Contraband is defined as "[a]ny item whose possession is forbidden by law." Sec. HSS 328.16(1)(b). Section 161.41(3), Stats., provides that it is unlawful to possess a controlled substance, with some exceptions not applicable in this case, and sec. 161.14(4)(t), Stats., lists tetrahydrocannabinols contained in marijuana as a controlled substance.

Officer Robert Ley, a police officer involved in the arrest of Flakes, provided information to Gregory Mulry, Flakes' parole agent. Ley told Mulry that Flakes was arrested for two counts of delivery of a controlled substance, marijuana, in his apartment building; that Ley suspected that there were more drugs in Flakes' apartment; and that Flakes had refused to consent to a search of his apartment. Ley also described the nature of the controlled buys. The information was detailed, it came from a source that did not have reason to supply inaccurate information, and it concerned the activity of the client. *See* Wis. Adm. Code, sec. HSS 328.21(6)(b), (c), (d) and (e). Further, the trial court found that this information, along with the agent's knowledge of Flakes and his

history, was adequate knowledge to justify a search. *See* sec. HSS 328.21(6)(g). The trial court further found that the purpose of the search was to ascertain any other possible grounds for revocation of Flakes' parole, and that Mulry had not yet made that decision. Mulry needed to verify Flakes' compliance with the rules of supervision and state and federal law. *See* sec. HSS 328.21(6)(i). Based on all of the above, we conclude that Mulry had reasonable grounds to believe that Flakes' apartment contained contraband, and that the search was therefore constitutional.

■■

We also conclude that exigent circumstances existed to allow the search without the supervisor's approval. Approval of the supervisor should be obtained unless exigent circumstances require a search without approval. Wis. Adm. Code, sec. HSS 328.21(3)(a). The trial court found that Mulry had attempted to secure a supervisor's approval, but due to the absence of all supervisory personnel, he was unable to do so. Mulry believed that exigent circumstances existed because the landlord had informed him that he intended to immediately empty Flakes' apartment of his belongings and was proceeding to change the locks when the agent arrived. We conclude that exigent circumstances required that the parole agent's search be conducted without the supervisor's approval.

*By the Court.*—Judgment and order affirmed.