# STATE of Wisconsin, Plaintiff-Respondent,

## v.

# Charles Nels AXELSON, Defendant-Appellant.†

Court of Appeals

*No. 88–1298–CR. Submitted on briefs January 31, 1989.—*
*Decided February 22, 1989.*

(Also reported in 441 N.W.2d 259.)

† Petition to review denied.

340

On behalf of the defendant-appellant, the cause was submitted on the briefs *Henry A. Sibbing* of Lake Geneva.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,*

attorney general, and *Barry M. Levenson,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   Charles Nels Axelson appeals from a judgment of conviction, claiming that the Walworth County Sheriff's Department conducted an untimely and therefore unreasonable inventory search of his impounded vehicle. Axelson thus argues that the items found during inventory and used at his trial should have been suppressed. We hold that a three-day hiatus between impounding and inventorying a vehicle does not render a warrantless inventory search illegal.

Axelson was driving towards Beloit when he was stopped by a Walworth deputy and arrested for theft. His vehicle was then towed to the property area. The department decided to conduct an inventory of the vehicle. However, the inventory was not conducted immediately. The property officer assigned to the task was about to go off duty for two days, and he conducted the inventory when he returned. Three days passed between impounding and inventorying the vehicle. Other pertinent facts will be discussed in the body of the opinion, as necessary.

The Fourth Amendment of the United States Constitution protects the "right of the people to be secure ... against unreasonable searches and seizures." Article I, sec. 11 of the Wisconsin Constitution is substantially the same, and Wisconsin courts have "consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment." *State v. Fry,* 131 Wis. 2d 153, 172, 388 N.W.2d 565, 573, *cert. denied,* 479 U.S. 989 (1986).

While warrantless searches are per se unreasonable, inventory searches are now a well-defined exception to the warrant requirement. *Colorado v. Bertine,* 479 U.S. 367, 371 (1987). Wisconsin recognizes the right of the police to conduct a warrantless inventory search of an impounded vehicle, but law enforcement officers may not engage in an unlimited investigative search under the guise of a police inventory search. *State v. Prober,* 98 Wis. 2d 345, 351–52, 297 N.W.2d 1, 5 (1980).

Axelson correctly asserts that the purposes of inventory searches are protection of an arrestee's property from theft, protection of the police force from false claims of missing property, and protection of the police from dangers within the vehicle. *Id.* at 354–55, 297 N.W.2d at 6–7. From these purposes, Axelson fashions a "stopwatch theory" to govern inventory searches:

> By waiting three days to inventory the vehicle ... the police have lost the privilege to search the vehicle without first obtaining a search warrant. The reasons for the inventory have been lost with time. Within the three days any person with access to the property barn could have removed valuables and surely a false claim could be made leaving the department defenseless against the assertion that the items were removed during that three-day period.
>
> ....
>
> ... After three days there is no reason to suspect that anything within that automobile would cause imminent danger to the police department.

Axelson's stopwatch theory is directly at odds with the United States Supreme Court's directives regarding inventory searches and we reject it.

The first United States Supreme Court case recognizing the validity of warrantless inventory searches involved a week's delay between impounding and inventorying the vehicle. *Cooper v. California,* 386 U.S. 58, 58 (1967). The *Cooper* Court stated that "[i]t would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." *Id.* at 61–62. In determining the validity of an inventory search, the court must analyze "whether the search was reasonable under the Fourth Amendment .... The test of reasonableness cannot be fixed by per se rules; each case must be decided on its facts." *South Dakota v. Opperman,* 428 U.S. 364, 372 (1976) (citations omitted).

Law enforcement officers face a continuing possibility of theft and of false claims until an inventory has been conducted. They also face the continuing possibility that something alive, perishable, or potentially explosive is within the vehicle. *See Prober,* 98 Wis. 2d at 354–55, 297 N.W.2d at 6–7. While at some point the purpose of an inventory search may be belied by the passage of time alone, three days is not such a period, as seven days is not. *See Cooper,* 386 U.S. at 61–62.

Axelson then argues that even if three days does not by itself render an inventory search illegal, then the failure to follow standard police procedure at least raises an inference that the search was for investigative reasons. We agree that when a protective search is carried out in accord with standard police procedure, there is some assurance that the intrusion is limited to the extent necessary for carrying out the caretaking function. *Opperman,* 428 U.S. at 374–75. We disagree

that the Walworth County Sheriff's Department violated its own inventory procedure.

The Walworth County Sheriff's Department's internal operating procedures call for a limited inventory of nonevidentiary items "as soon as practical." This procedure is distinguished from a complete inventory of vehicles seized under forfeiture provisions, which "is to be made *immediately* upon arrival at police facility." (Emphasis in original.) Lieutenant William Holder testified that he felt he was implementing department policy when he allowed the property officer to delay inventory until his return to duty.

In light of the distinction between searches that are "immediate" and those that are "as soon as practical," and in light of Lieutenant Holder's testimony, we reject Axelson's implicit claim that "as soon as practical" imposes a more stringent timeliness requirement upon the Walworth County Sheriff's Department than that of reasonableness imposed by the United States Supreme Court. Therefore, we do not view the three-day hiatus as itself a departure from standard police procedure demonstrating an investigatory purpose.

The determinative question in deciding whether this inventory was unreasonable is not how much time passed between impounding and inventory but rather whether the inventory was a disguised investigative search. *See Prober*, 98 Wis. 2d at 352, 297 N.W.2d at 5. The timing of an inventory search is but one fact among many for determining the motive of a purported inventory search. *See Black v. State*, 418 So. 2d 819, 821 (Miss. 1982).

On review of a trial court's suppression order, the findings of fact, if any, will be sustained unless clearly erroneous. *Bies v. State,* 76 Wis. 2d 457, 469, 251 N.W.2d 461, 467 (1977); *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). The trial court's determination that the search was an inventory involves a determination of motivation. *See Thompson v. State,* 83 Wis. 2d 134, 140–41, 265 N.W.2d 467, 470 (1978). To the extent that this involves assessment of police credibility, the trial court's determination will be sustained unless it is clearly erroneous. *State v. Pires,* 55 Wis. 2d 597, 602–03, 201 N.W.2d 153, 156 (1972); *Noll,* 115 Wis. 2d at 643, 340 N.W.2d at 577. However, this court will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied. *Bies,* Wis. 2d at 469, 251 N.W.2d at 467.

The record shows that Officer Todd Wiese promptly determined that an inventory was appropriate in light of the vehicle's impoundment. Lieutenant Holder then contacted the senior property officer. This officer was not scheduled to work for the next few days. Lieutenant Holder determined that he would not send the property officer "out on overtime in inventorying the vehicle." We see nothing unreasonable with this decision.

The two other Walworth property officers were working on other cases. Lieutenant Holder determined that he would not remove them from their own cases to work on a case assigned to another. There is nothing unreasonable or impractical in this decision.

Walworth law enforcement policy calls for a property officer to do the inventory. In not assigning some

other officer to inventory Axelson's vehicle, Lieutenant Holder complied with standard procedure.

Inventories pursuant to standard police procedures are reasonable. *Opperman,* 428 U.S. at 376; *Thompson,* 83 Wis. 2d at 139–40, 265 N.W.2d at 470. Had Lieutenant Holder expedited inventory by pulling other officers from their assignments, standard procedure would have been altered. Such deviation would not provide assurance, as compliance does, that inventory is only fulfilling the caretaker function. *See Opperman,* 428 U.S. at 374–75.[1]

Axelson argues that the presence of Detective Swart at the inventory indicates that the purpose of the search was investigative. However, the record made at the suppression hearing provides no information about Detective Swart or his connection to the case except that he was present and evidently assisted the property officer during the inventory. We find the inference urged by Axelson unpersuasive.

This record supports the trial court's determination that the search of Axelson's vehicle was undertaken solely as a routine inventory search. Under the circumstances, a three-day delay in inventory occasioned by the assigned property officer's schedule was reasonable. We hold that the inventory was not a pretext for an investigatory search but was validly undertaken within the caretaking function of the sheriff's department. Therefore, the items found during the

---

[1]In some instances, standard inventory procedure could itself be a subterfuge for investigative searches. *See Thompson v. State,* 83 Wis. 2d 134, 139–40, 265 N.W.2d 467, 470 (1978). Axelson has not argued that this is such a case.

course of the search were correctly not suppressed by the trial court.

Because we uphold the validity of the inventory, we do not address the state's alternative ground for affirmance.

*By the Court.*—Judgment affirmed.