STATE of Wisconsin, Plaintiff-Appellant,†

v.

Charles J. HAJICEK, Defendant-Respondent.

Court of Appeals

*No. 98–3485–CR. Submitted on briefs June 4, 1999.—Decided September 30, 1999.*

(Also reported in 602 N.W.2d 93.)

†Petition to review granted.

697.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jennifer E. Nashold,* assistant attorney general, and *James E. Doyle,* attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bruce J. Rosen* and *Susan C. Blesener* of *Pellino, Rosen, Mowris & Kirkhuff,* Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DEININGER, J. The State appeals an order suppressing evidence collected during a warrantless search of Charles Hajicek's residence. The trial court determined that the search was not a probation search as the State maintained, but a police search conducted in violation of the Fourth Amendment. We conclude that the question of whether a search involving both law enforcement and probation officers constituted a police search or a probation search is a factual one, which we review for clear error. We further conclude that the trial court's finding that the evidence in this case was discovered during a police search was not

clearly erroneous. We thus affirm the trial court's suppression order, inasmuch as the State has not shown that the challenged search comes within any recognized exception to the warrant requirement.

## BACKGROUND

Hajicek was convicted in 1995 of possessing marijuana with intent to deliver, and he was placed on probation. His probation had progressed to minimal supervision in the summer of 1997. In August of that year, Hajicek's probation officer received an anonymous tip that Hajicek was involved in drug use or trafficking. The probation officer ordered a urinalysis, confirmed the information contained in the tip with the La Crosse County Sheriff's Department, and forwarded Hajicek's file to the La Crosse County Office of Community Corrections. Probation Supervisor William Hammes received the file and decided to conduct a search of Hajicek's residence.

In verifying information contained in the file, Hammes contacted Agent Sielehr of the Wisconsin Department of Justice, Division of Narcotics Enforcement (DNE), and Investigator Papenfuss of the La Crosse County Sheriff's Department. Hammes learned that the DNE was investigating Hajicek for drug trafficking and was searching his garbage for evidence with which to obtain a search warrant. Agent Sielehr asked Hammes to refrain from conducting a home search so that the DNE could pursue its investigation. After seeking advice from the regional chief of probation and parole, Hammes agreed to postpone his search. To avoid interfering with the DNE investigation, Hammes also refrained from contacting Hajicek.

Over the next three weeks, law enforcement officials tried to obtain sufficient evidence of drug activity

to obtain a search warrant for Hajicek's residence. On September 24, 1997, Papenfuss phoned Hammes and informed him that the DNE's efforts had failed. Hammes decided during the phone call to conduct a search of Hajicek's residence and requested assistance from Papenfuss. Papenfuss responded that DNE Agents Sielehr and Thelen were also available at that time to assist with the search. Hammes called Papenfuss back five minutes later to confirm arrangements for an immediate search of Hajicek's residence. Investigator Papenfuss then contacted the district attorney and notified him of the impending search.

Hammes, Investigator Papenfuss, Agents Sielehr and Thelen, and a La Crosse probation officer went to Hajicek's residence. Hammes knocked on the door and Hajicek answered. After identifying himself to Hajicek, Hammes began to search the residence. As Hammes began his search, the law enforcement officers secured the house. Hammes discovered a drug identified as Percocet in Hajicek's bedroom, and placed Hajicek on a probation hold. Hammes then asked Hajicek if he had any marijuana on the premises, and Hajicek directed him to a duffel bag in the garage filled with a large amount of marijuana. At this point, law enforcement officers removed Hajicek from the premises and procured a search warrant. Law enforcement later obtained two additional warrants.

Based on the evidence gathered in these searches, the State charged Hajicek with four counts of drug possession and two of possession with intent to deliver. Hajicek moved to suppress the evidence gathered in the searches, alleging that the evidence was gathered

in violation of the Fourth Amendment. The trial court granted his motion. The State appeals.[1]

## ANALYSIS

Both the Fourth Amendment to the United States Constitution and Article I, section 11 of the Wisconsin Constitution prohibit unreasonable searches and seizures.[2] Warrantless searches are per se unreasonable unless they fall within a few carefully delineated exceptions. *See State v. Boggess*, 115 Wis. 2d 443, 449, 340 N.W.2d 516, 520 (1983). A search warrant is not required, however, for the search of a probationer's residence by probation officials. *See State v. Griffin*, 131 Wis. 2d 41, 388 N.W.2d 535 (1986), *aff'd sub nom. Griffin v. Wisconsin*, 483 U.S. 868 (1987).

A probation officer may search a probationer's residence without a warrant if the officer has reasonable grounds to believe that the probationer is violating the terms of his or her probation. *See Griffin*, 131 Wis. 2d

---

[1] *See* § 974.05(1)(d)2, STATS.

[2] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The wording of Article I, section 11 of the Wisconsin Constitution is virtually identical. In construing Article I, section 11 of the Wisconsin Constitution, the Wisconsin Supreme Court consistently follows the United States Supreme Court's interpretation of the Fourth Amendment. *See State v. Betterley*, 191 Wis. 2d 407, 416, 529 N.W.2d 216, 219 (1995).

at 58, 388 N.W.2d at 541; *see also Griffin v. Wisconsin*, 483 U.S. 868, 872–76 (1987). This narrow exception, however, applies only to searches conducted by probation officials. *See Griffin*, 131 Wis. 2d at 56–57, 388 N.W.2d at 540–41. It does not extend to searches conducted by the police. *See id.* Although police officers and probation officers may work together to achieve their legitimate objectives, a probation officer may not serve as a "stalking horse" for the police.[3] That is, a probation search, which is constitutionally justifiable on less than probable cause, may not be used as a subterfuge to further a criminal investigation. *See State v. Flakes*, 140 Wis. 2d 411, 426–27, 410 N.W.2d 614, 620 (Ct. App. 1987); *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994); *United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991). A probation officer serves as a "stalking horse" when the officer uses his or her authority to help the police evade the Fourth Amendment's usual warrant and probable cause requirements. *See Harper*, 928 F.2d at 897.

In its decision and order suppressing the seized evidence, the trial court reviewed the facts set forth in the record and found "that the search was a police search not a probation search." The court determined that Probation Supervisor Hammes "acted at the behest of law enforcement" and that law enforcement objectives dominated the search of Hajicek's residence. The court noted that "[l]aw enforcement determined first when the search would not take place, and after their own investigation faltered, determined when the search could take place." Because the initial search was

---

[3] A "stalking horse" is "a horse, or a figure of a horse, behind which a hunter hides in stalking game," or "anything put forward to mask plans or efforts; pretext." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1855 (2d ed. 1987).

conducted without a warrant and did not fall within the exception to the warrant requirement for probation searches, the trial court suppressed the evidence seized in both the initial search and the subsequent warrant searches, the latter having been authorized on the basis of information obtained in the initial search.

The parties dispute the standard we are to apply in reviewing the trial court's determination that this was a police search and not a probation search. Whether a given search is reasonable under the Fourth Amendment is a question of constitutional fact, and we review such questions de novo. *See Griffin*, 131 Wis. 2d at 62, 388 N.W.2d at 543. Findings of evidentiary or historical fact, however, will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence.[4] *See id.* We must first decide, therefore, whether the trial court's determination that the search of Hajicek's residence was a police search established a constitutional fact or a historical fact. We conclude it was the latter.

No Wisconsin appellate decision addresses directly the question of whether a trial court's determination that an alleged probation search was actually a police search is subject to our de novo review, or whether it constitutes a factual finding we review only for clear error. The supreme court has implied, however, that the determination is a finding of evidentiary or historical fact. *See id.* at 63, 388 N.W.2d at 543 ("The record before the trial court also supports its *finding* that this was not a police search.") (emphasis added). This court

---

[4] "The 'great weight and clear preponderance of the evidence' standard is basically a 'clearly erroneous' standard." *State v. Mitchell*, 167 Wis. 2d 672, 682 n.1, 482 N.W.2d 364, 368 (1992) (citation omitted).

has also implied that it is a factual finding. *See Flakes*, 140 Wis. 2d at 426, 410 N.W.2d at 620 ("The trial court *found* that there was no credible evidence *to find* that the parole agent 'was a stalking horse or agent for the Milwaukee Police Department.' ") (emphasis added).

Although the proper standard of review for the question before us is a matter of first impression in Wisconsin, federal courts have addressed the issue. The Ninth Circuit has concluded that the police search versus probation search issue "is a question of fact, reviewed for clear error." *See United States v. Richardson*, 849 F.2d 439, 441 (9th Cir. 1988); *see also United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir. 1985) ("This is a question of fact subject to the 'clearly erroneous' standard of review, even though the ultimate issue of whether the search conforms to the Fourth Amendment presents a mixed question of fact and law."). We find the Ninth Circuit's conclusion persuasive because it makes explicit what the Wisconsin precedents noted above strongly imply.

The State urges us to reject the Ninth Circuit analysis and to conclude instead that the issue at hand raises a question of law which must be reviewed independently of the trial court's determination. The State, however, cites no precedent from any jurisdiction holding that whether a given search is a probation search or a police search is a question of law (or one of "constitutional fact"). The State insists that its assertion is supported by *State v. Flakes*, where we said: "Whether a search is reasonable is a question of constitutional fact, which we review independent of the trial court's conclusion." *Flakes*, 140 Wis. 2d at 426, 410 N.W.2d at 620. We agree with the cited proposition, but disagree that it provides any support for the State's contention.

The ultimate issue before this court is indeed the reasonableness of the search, which is a question we decide de novo. Only after the relevant facts are established, however, may we apply the appropriate Fourth Amendment standard of reasonableness to them. In particular, we cannot commence the reasonableness inquiry in this case until we know whether the search of Hajicek's residence was a police search or a probation search. If it was a warrantless police search, we would consider whether the State had established its reasonableness under one of the recognized exceptions to the warrant requirement.[5] If it was a probation search, we would consider instead whether Hammes had "reasonable grounds" to believe that probationer Hajicek had contraband within his residence. *See Griffin*, 131 Wis. 2d at 60, 388 N.W.2d at 542.

The dissent claims that we are somehow avoiding the "constitutional connection" by concluding that the police-versus-probation search question is a factual one, and it implies that we should first inquire whether Probation Supervisor Hammes had reasonable grounds to search Hajicek's residence. Dissent at 715–16. The dissent's approach, however, essentially collapses our customary two-step review (factual findings for clear error, followed by de novo application of constitutional standards to the facts as found) into one step; at a minimum, it reverses our customary order in addressing these questions. We do not agree that "the determination that an agent has acted as a stalking horse also determines that a probationer has been subject to an unconstitutional search." Dissent at 716.

---

[5] Recognized exceptions to the warrant requirement for police searches include plain view, consent, lawful arrest, exigent circumstances, hot pursuit and "stop and frisk." *See State v. Monahan*, 76 Wis. 2d 387, 396, 251 N.W.2d 421, 424 (1977).

That determination only tells us where we are to begin our de novo constitutional inquiry—with the standards of reasonableness applicable to warrantless police searches, or with the lesser standards applicable to probation searches. The dissent's approach short-circuits the inquiry by jumping ahead to a conclusion that the present search would have been reasonable if it had been a probation search, and reasoning that since that is the case, the probation agent could not have been a stalking horse for the police. Dissent at 716–17.

We believe that under the dissent's approach to the questions before us, the precedents which draw a distinction between the Fourth Amendment standards applicable to police searches and those applicable to probation searches are rendered meaningless. All that law enforcement personnel would ever have to do to get inside the residence of a probationer being investigated for criminal activity, would be to inform the probationer's agent of the suspected activity, thereby giving the agent reasonable grounds to conduct a probation search, with which the police would, of course, gladly assist. It is, however, precisely this potential use of probation personnel as "stalking horses" in law enforcement's hunt that has given rise to the precedents we apply in this opinion.

The dissent also implies that because the police-versus-probation search determination is based on historical facts or events, and because Fourth Amendment reasonableness determinations are also based on historical facts and events, the present determination must also be one of constitutional fact. Dissent at 715. We cannot accept this logic. Just because questions of law are based upon a review of factual findings, it does not necessarily follow that certain factual findings cannot themselves be derived from other facts of record.

An example is intent, which can rarely be proven directly, and is usually derived or inferred from other facts—what was said and done, etc. But, the derivative nature of a finding of intent makes it no less of a factual finding, one that will not be set aside on appeal unless it is clearly erroneous. *See State v Lettice*, 221 Wis. 2d 69, 77, 585 N.W.2d 171, 175–76 (Ct. App. 1998); *State v. McCollum*, 159 Wis. 2d 184, 193–94, 464 N.W.2d 44, 47 (Ct. App. 1990).

We noted in *McCollum* that "[t]he line between historical fact and constitutional fact is 'often fuzzy at best.' " *McCollum*, 159 Wis. 2d at 194, 464 N.W.2d at 47 (citation omitted). Nonetheless, we concluded that the trial court's finding regarding the State's motivation and intent in selectively bringing criminal charges against only women was a factual one, to be reviewed under the clearly erroneous standard. *See id.* We noted that "issues of intent are commonly treated as factual matters," and that "[d]eciding whether a discriminatory purpose exists demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 194, 464 N.W.2d at 47–48 (citations omitted). The same is true of the determination at issue here, which also involves an assessment of the motivations and intent of state actors, the police and probation officials who were involved in the search of Hajicek's residence. We conclude that the trial court is much better positioned than we to determine, after a "sensitive inquiry into [the] circumstantial and direct evidence" before it, whether the search was motivated, directed and timed to serve law enforcement needs and purposes, or those of probation supervision. *See id.*

The trial court's determination that the challenged search was a police search is not immune from our review, however. We have concluded that the determi-

nation is one of evidentiary or historical fact, which we may set aside, but only if it is contrary to the great weight and clear preponderance of the evidence. *See Flakes*, 140 Wis. 2d at 426, 410 N.W.2d at 620. The State conceded in its opening brief that it did "not dispute the trial court's findings of fact." The State undoubtedly would not have made this concession had it known that we would reject its assertion that we must review de novo the trial court's determination that a police search had occurred. Accordingly, we proceed to an inquiry of whether the trial court clearly erred in finding that the search of Hajicek's residence was a police search.

In undertaking our review of the trial court's factual finding we are mindful that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Section 805.17(2), STATS. Furthermore, in examining a trial court's factual findings, this court will search the record for evidence to support those findings, not for evidence which would support a finding it did not make. *See Estate of Becker*, 76 Wis. 2d 336, 347, 251 N.W.2d 431, 435 (1977). We conclude that the trial court did not clearly err in finding that the search of Hajicek's residence was a police search.

The trial court based its ultimate finding that the search of Hajicek's residence constituted a police search primarily on the following underlying facts: (1) law enforcement officers dictated the timing of the search by asking Probation Supervisor Hammes to delay his search by nearly a month and then notifying Hammes when he was free to perform his search; (2) the same law enforcement officers who investigated Hajicek and were unable to obtain probable cause for a

search warrant participated in the search; (3) the district attorney was notified before the search was conducted; (4) neither the police officers nor the probation officers documented their communications regarding the search; and (5) by delaying his search and failing to obtain a urinalysis or otherwise confront Hajicek about his suspected illegal activities, Hammes failed to carry out the objectives of the probation supervision.

The record contains evidence to support each of these underlying findings. Law enforcement officers contacted Probation Supervisor Hammes and asked him to postpone his search while they tried to "make [their] case" against Hajicek. Once it became evident that they were unable to establish probable cause, law enforcement officials again contacted Hammes and advised him that their efforts had failed. On receiving the call from law enforcement, Hammes decided to immediately conduct a search of Hajicek's residence, in part to accommodate the availability of DNE agents, and, within an hour, the search was initiated.

The record also suggests that the presence of DNE agents was "unusual" in a probation search. At trial, an expert in the Department of Corrections' procedure testified that justice department officials seldom involve themselves in local probation issues, and that it was unusual that the same officers who had previously investigated Hajicek were available to assist in Hammes' search. Also, at the behest of law enforcement, Hammes refrained from contacting Hajicek for three weeks and did not conduct the urinalysis ordered by Hajicek's probation officer because he "didn't want to . . . make [Hajicek] suspicious that law enforcement was conducting an investigation." Hammes failed to document the communications he had with law

enforcement officers over the course of those three weeks, and he failed to develop a search plan as required by the Department of Corrections' manual.

In short, the record contains support for the trial court's finding that Probation Supervisor Hammes' handling of the search failed to carry out the goals of probation supervision.[6] The court's finding that the search was a police search, one that was timed and directed to further the needs of law enforcement and not those of probation supervision, is not contrary to the great weight and clear preponderance of the evidence produced at the suppression hearing.

■

Our final task is to determine whether the search of Hajicek's residence was unreasonable within the meaning of the Fourth Amendment. As we have noted, a warrantless police search is unreasonable unless it falls within one of several narrow exceptions to the warrant requirement.[7] The State does not argue that the present record provides a basis for us to conclude that any recognized warrant exception applies to the police search of Hajicek's residence. Thus, the search of

---

[6] In *Griffin v. Wisconsin*, 483 U.S. 868, 876–79 (1987), the Court discussed the need for prompt searches when a probation officer reasonably believes a probationer is violating the terms of supervision. "In some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty that the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." *Id.* at 879. The trial court cited this passage in concluding that Supervisor Hammes' decision to delay the probation search to accommodate the police investigation was contrary to the goals of probation supervision.

[7] See footnote 5, above.

Hajicek's residence was per se unreasonable and the evidence seized was properly suppressed. *See State v. Boggess*, 115 Wis. 2d 443, 449, 340 N.W.2d 516, 520 (1983).

## CONCLUSION

For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.

ROGGENSACK, J. *(dissenting)*. I write in dissent because I conclude that the majority opinion arrives at an erroneous result in its analysis of the search conducted by a probation supervisor (William Hammes) and a La Crosse probation agent (Michael Johnson): (1) due to its application of an incorrect standard of review to the decision of the circuit court, and (2) due to its assumption that even when there are reasonable grounds to conduct a probation search pursuant to WIS. ADM. CODE § DOC 328.21(3), that constitutionally sufficient basis for the search is lost when a probation agent delays that search at the request of other law enforcement personnel who are also investigating the probationer.

### Historic Fact/Constitutional Fact.

The majority's opinion turns on the standard of review it applies to the circuit court's decision. It concludes that whether Hammes and Johnson were stalking horses when they conducted the search is a question of historic fact. Based on that conclusion, it applies the "clearly erroneous" standard of review and affirms the circuit court. Whether the conclusion that Hammes and Johnson acted as stalking horses is a

finding of historic fact or constitutional fact is an important question because Wisconsin appellate courts defer to findings of historic fact, while they review a circuit court's determinations of constitutional fact *de novo*. We independently review determinations of constitutional fact because it is our responsibility to uphold a consistent "scope of constitutional protections, representing the basic value commitments of our society, [which] cannot vary from trial court to trial court, or from jury to jury." *State v. Fry*, 131 Wis. 2d 153, 171, 388 N.W.2d 565, 573 (1986) (citations omitted).

No Wisconsin court has directly addressed whether the determination that probation agents were stalking horses for law enforcement is a question of historic fact or one of constitutional fact. The majority cites *United States v. Harper*, 928 F.2d 894 (9ᵗʰ Cir. 1991), *United States v. Richardson*, 849 F.2d 439 (9ᵗʰ Cir. 1988) and *United States v. Jarrad*, 754 F.2d 1451 (9ᵗʰ Cir. 1985), as the bases for its conclusion that the determination is one of historic fact. Although those cases do suggest that whether probation agents were stalking horses is a question of historic fact, none have any reasoning which led the courts to their conclusions. For example, in *Jarrad*, the earliest case, the issue is addressed solely by this statement: "This is a question of fact subject to the 'clearly erroneous' standard of review, even though the ultimate issue of whether the search conforms to the Fourth Amendment presents a mixed question of fact and law." *Jarrad*, 754 F.2d at 1454. The court engaged in no reasoning and no analysis prior to or subsequent to making that assertion.[1]

---

[1] *United States v. Jarrad*, 754 F.2d 1451, 1454 (9ᵗʰ Cir. 1985), cites *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982), as precedent for its assertion. However, *Pullman* has

*Richardson* simply cites *Jarrad*, and no reasoning occurs in *Harper*. Rather, it appears from each case that the question of whether the determination of the lower court was one of historic fact or one of constitutional fact was never a contested issue. Here, the issue is contested.

In order to examine whether the conclusion of "stalking horse" is one of historic fact or constitutional fact, one must first define the terms "historic fact" and "constitutional fact" and then analyze how to tell the difference. Black's Law Dictionary defines a fact as, "[a] thing done . . . an event . . . an actual occurrence." BLACK'S LAW DICTIONARY 591 (6th ed. 1990). This is the usual meaning of historic fact, *i.e.*, it is something that has happened.

However, courts have long acknowledged that all facts are not historic facts. As Justice Frankfurter said: " '[I]ssue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion incorporates standards of conduct or criteria for judgment which in themselves are decisive of constitutional rights." *Watts v. Indiana*, 338 U.S. 49, 51 (1949). Additionally, learned treatises define a constitutional fact as something more than an event which happened. It is a fact whose "determination is 'decisive of constitutional rights.' " RUGGERO J. ALDISERT, THE JUDICIAL PROCESS 704 (1976) (quoting William R. Bishin & Christopher D. Stone, *Constitutional Facts*, LAW, LANGUAGE & ETHICS 365–70 (1972)).[2] Determinations of constitutional fact depend on find-

nothing to do with the assertion made. Rather, it parses whether intent is a question of law or one of fact.

[2] Examples of facts that have been set out as constitutional facts in Wisconsin are "voluntariness," as it relates to a confession or consent to search, and the "reasonableness" of a search.

ings of historic fact. *See Watts*, 338 U.S. at 51–52. Therefore, in analyzing into which category of fact the circuit court's "stalking horse" conclusion falls, we must determine whether it is an event or whether its determination is decisive of a constitutional right.

The circuit court's determination that the probation agents were "stalking horses" for law enforcement is a decision that it reached based upon events which had occurred between the probation agents and law enforcement officers. Similarly, the determinations of reasonableness, in regard to a search, and voluntariness, in regard to a confession, are also determinations which are made based on historic events in regard to the interaction between law enforcement personnel and a defendant. The supreme court has already concluded that the determinations of reasonableness and voluntariness are decisive of constitutional rights. *See State v. Griffin*, 131 Wis. 2d 41, 62, 388 N.W.2d 535, 543 (1986). In order to decide whether the determination that the agents acted as stalking horses was decisive of a constitutional right, we must examine under what circumstances such a determination may be made and what consequences flow therefrom.

Cooperation between law enforcement personnel and probation agents, in and of itself, will not convert an otherwise lawful probation search into an unconstitutional search. *See Jarrad*, 754 F.2d at 1454. It is only when probation agents are acting *solely* as instrumentalities of law enforcement that they are stalking horses. *See State v. Flakes*, 140 Wis. 2d 411, 426–27, 410 N.W.2d 614, 620–21 (Ct. App. 1987).[3] Therefore,

---

*See, e.g., State v. Griffin*, 131 Wis. 2d 41, 62, 388 N.W.2d 535, 543 (1986).

[3] *See also United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991) ("[P]olice and parole officers are entitled to work

when probation agents are stalking horses, they do not have reasonable grounds for a probation search, for if they had reasonable grounds, they could not be acting *solely* as a subterfuge for a criminal investigation.

The converse of that conclusion is also true. That is, if a probation agent had reasonable grounds to search, then he was not a stalking horse; rather, he would have acted within the scope of his own lawful authority. Therefore, I conclude that the determination that an agent has acted as a stalking horse also determines that a probationer has been subject to an unconstitutional search. Accordingly, that determination is a question of constitutional fact. Stated another way, the determination that probation agents acted as stalking horses precludes the conclusion that the search was a constitutionally permissible probation search.[4] Based upon the foregoing, I conclude that the

---

together to achieve their objectives; concerted action does not in and of itself make a search constitutionally infirm."); *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir. 1988) (" 'The fact that police investigation of [a crime] . . . preceded the involvement of parole officials does not in itself indicate that the search was initiated by police officers.' ") (citations omitted).

[4] The majority tries to avoid this constitutional connection by stating that it must determine if the search were a police search. The majority would characterize the search as a police search if Hammes and Johnson were stalking horses for law enforcement, rather than characterize it as a probation search without reasonable grounds. As a police search, it would then analyze whether any of the exceptions to a warrant exist. (Majority opinion at 706). However, the State has not argued that the search comported with a constitutional police search, as the majority notes in its brief paragraph holding the search unconstitutional. Furthermore, the stalking horse issue arises only when the constitutionality of a search conducted or authorized by probation officers is under review.

correct standard of review to apply to the determination of whether the agents were stalking horses is a *de novo* review.

Applying a *de novo* standard of review, I conclude that Hammes and Johnson had reasonable grounds to conduct the search. Reasonable grounds are determined by examining the standard expressed in WIS. ADM. CODE § DOC 328.21(3)(a). *See State v. Griffin*, 131 Wis. 2d 41, 61–62, 388 N.W.2d 535, 542–43 (1986), *aff'd sub nom. Griffin v. Wisconsin*, 483 U.S. 868 (1987). Under § DOC 328.21(3)(a), a search of a probationer's living quarters may be conducted if "there are reasonable grounds to believe that the quarters . . . contain contraband." Contraband is "[a]ny item whose possession is forbidden by law." WIS. ADM. CODE § DOC 328.16(1)(b). Section 961.41(3g), STATS., provides that it is unlawful to possess a controlled substance, and cocaine is a controlled substance. *See* § 961.41(3g)(c).

The record reveals that Hajicek's probation officer received information on August 19, 1997 that Hajicek was deeply involved with cocaine and other drugs, as a user and as a source for others. According to DOC regulations, the agent contacted her supervisor, Hammes, and he decided to conduct a home search. Shortly after receiving Hajicek's file from the agent, Hammes learned that the Department of Narcotics Enforcement (DNE) was conducting an investigation of Hajicek as well. He was asked by DNE if he would delay his search, in order to permit DNE to conclude its investigation. Hammes agreed to do so.

On September 24, 1997, the DNE agents informed Hammes that they had not gotten the information they had sought. Hammes testified that he then "went back to [his] initial decision to conduct a search." No one asked Hammes to do the search, but he did ask for

717

assistance from La Crosse County Sheriff's Department to secure the residence, as is usual and customary for searches conducted by probation officials. The sheriff's department informed Hammes that DNE agents were also available to assist with the search and Hammes decided to do it without further delay.

When they arrived at Hajicek's residence, Hammes and Johnson conducted the search. None of the DNE agents nor the sheriff's investigator participated in the search. Hammes located Percocet in Hajicek's bedroom. As soon as he found it, he advised Hajicek that he was on probation hold and he asked him to cooperate in the rest of the search. Hajicek then told Hammes that there was marijuana in a duffel bag in the garage. Hammes and Johnson found a large quantity of marijuana in a duffel bag in the garage and Hajicek was placed under arrest and removed from the residence.

The DNE agents did not seize any property as a result of the search that Hammes and Johnson conducted. Rather, they obtained a search warrant and came back to the residence and found significant amounts of drugs, $255,901 in cash and a variety of other drug paraphernalia, indicative of an ongoing drug selling venture. Based on those historic facts, which are uncontested in the record and the historic facts found by the circuit court which do not conflict with the facts related above, I would conclude that the probation agents were not stalking horses for law enforcement; that they had reasonable grounds to conduct a probation search; and I would reverse the decision of the circuit court suppressing the evidence found.

**Reasonable Grounds.**

The majority opinion does not discuss whether Hammes had reasonable grounds to conduct a search of Hajicek's residence pursuant to WIS. ADM. CODE § DOC 328.21(3). Rather, it seems to assume that if he did, he lost the constitutionally sufficient basis for the search because he acquiesced to a DNE officer's request to delay the search and did not conduct it until three weeks after he had initially decided to do so.[5]

As noted earlier in this dissent, I conclude that Hammes had reasonable grounds to conduct a constitutionally permissible search before he learned of DNE's investigation. There is no precedent for concluding that he lost those grounds when he delayed the search for three weeks. To the contrary, in *State v. Axelson*, 149 Wis. 2d 339, 441 N.W.2d 259 (Ct. App. 1989), we addressed whether an inventory search of an impounded vehicle remained constitutional if it was not conducted immediately upon impoundment, but delayed for a few days. We concluded that the search remained reasonable because there were valid reasons for doing the search at the time it was done. *See id.* at 343–44, 441 N.W.2d at 261.

A probation agent has an ongoing duty to supervise his or her clients during the terms of their probations. An agent does so to assure that the probationers are complying with the terms and conditions of their probation. *See Flakes*, 140 Wis. 2d at 428, 410

---

[5] This issue was squarely presented by the State in its brief, but the respondent's brief does not address it. Rather, the respondent focuses on whether WIS. ADM. CODE § DOC 328.22(1) required mandatory detention of Hajicek as soon as there were reasonable grounds to believe he was violating the conditions of his parole.

N.W.2d at 621. Therefore, if Hammes had information that Hajicek had contraband in his residence on the date he conducted the search, WIS. ADM. CODE § DOC 328.16(1)(b) continued to provide a lawful basis for the search.

The record shows that at the time the probation search was conducted, Hammes had more, not less, information that Hajicek was involved with drugs because Hammes had verified some of the information in the tip the probation agent had received in August and he had the reports from DNE as well. Additionally, no one has identified a requirement that a probation search be conducted as soon as the agents have reasonable grounds to do so. Many times it may be more prudent to collect additional information before conducting a search. Therefore, I conclude that the reasonable grounds to search which Hammes had prior to agreeing to DNE's request to delay the search, were not lost and the search was constitutionally permissible when conducted three weeks later.[6]

Because I conclude that the search was reasonable, I conclude the court erred when it suppressed the evidence. Therefore, I must respectfully dissent.

---

[6] Even if the standard of review used by the majority opinion were correct, I would conclude that the finding that the probation agents were stalking horses was clearly erroneous because the record shows Hammes had a constitutionally permissible basis to search the residence; and therefore, the agents were not acting *solely* on behalf of other law enforcement. *See State v. Flakes*, 140 Wis. 2d 411, 426–27, 410 N.W.2d 614, 620–21 (Ct. App. 1987); *Harper*, 928 F.2d at 897.