UNITED STATES of America,
Plaintiff-Appellee,

v.

Stephen JARRAD, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles McMANAMY,
Defendant-Appellant.

Nos. 84–5101, 84–5109.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1984.

Decided March 4, 1985.

David W. Wiechert, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

John P. Gyorgy, Deputy Federal Public Defender, Los Angeles, Cal., Hector C. Perez, Newport Beach, Cal., for defendant-appellant.

Before SNEED, ANDERSON, and FERGUSON, Circuit Judges.

SNEED, Circuit Judge:

This is a consolidated appeal from judgments entered against the two defendants for one armed and two unarmed robberies of three Riverside, California banks. Defendant McManamy was convicted under 18 U.S.C. §§ 2113(a) and (d) on three counts of robbing a federally insured bank. Defendant Jarrad was convicted under 18 U.S.C. §§ 2(a) and 2113(a) on three counts of aiding and abetting in the same three bank robberies. Jarrad was on parole during all three robberies; McManamy was a

parolee at the time of the second and third robberies. The two defendants were each sentenced to concurrent twenty-year terms on each count.

We affirm the district court's judgment as to both defendants.

## I.

### ISSUES PRESENTED ON APPEAL

Three issues are raised in this appeal. Both defendants challenge the district court's refusal to suppress evidence which was obtained under a state parole officer's authority to conduct warrantless searches. Jarrad, alone, raises two additional issues. He contends that the trial court erred in permitting an in-court identification allegedly tainted by infirmities in the pretrial identification process. Jarrad also argues that an FBI agent was improperly allowed to testify regarding a witness' alleged out-of-court identification of him when the witness, at trial, denied making the identification.

## II.

### DISCUSSION

A. *The Validity of the Parole Searches*

Both McManamy and Jarrad challenge the district court's refusal to suppress evidence obtained by the government in warrantless parole searches.

As the sole issue in his appeal, McManamy asserts that the trial court erred by failing to suppress the introduction into evidence of shotgun shells discovered in a search of his residence. The search was authorized by McManamy's newly-assigned parole officer, Gary Kenan. McManamy and parole officer Kenan had no contact prior to the search. Officer Kenan was familiar with defendant McManamy's case, however, through work with McManamy's previous parole officer. The search was conducted in parole officer Kenan's presence by Riverside detectives whom officer Kenan had asked to accompany him on the search. The shotgun shells discovered in

the search were later linked to a shotgun used in one of the bank robberies.

Defendant Jarrad challenges the district court's refusal to bar from evidence a shotgun discovered in the trunk of a car he was driving at the time of his arrest. Fontana police impounded the car and, pursuant to a telephone request by parole officer Kenan, Riverside detectives searched it. No parole officer was present at the search. Although he was not Jarrad's assigned parole officer, Kenan worked closely with Jarrad's individual parole officer on Jarrad's case prior to Kenan's authorization of the trunk search. There was no contact between Jarrad and parole officer Kenan before the search took place. The shotgun discovered in the search was later shown to be the same shotgun used in one of the bank robberies.

 Warrantless searches conducted by parole officers in the performance of their duties are subject to modified Fourth Amendment restrictions. In *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.) (en banc), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), we held that a warrantless parole search does not run afoul of the Fourth Amendment when the parole officer reasonably believes such search is necessary in the performance of his duties. *Id.* at 250. Excepted from the parole standard, however, are those cases in which the parole officer acts as a "stalking horse" to facilitate police investigations by circumventing the warrant requirement. *See id.* at 247.

Each defendant argues that the warrantless search conducted in his case was an invalid parole search on two grounds. First, the defendants contend that they did not validly consent to restrict their Fourth Amendment rights as a condition of their parole. Second, the defendants rely on *Latta v. Fitzharris* and claim that the parole officer authorizing the challenged searches, parole officer Kenan, was in fact a "stalking horse" for the police. The warrantless searches were not parole searches conducted to enforce their parole, the defendants assert, but were instead investiga-

tory police searches conducted in violation of their Fourth Amendment rights.

■ Defendants' first contention is without merit. The modification of Fourth Amendment protections afforded to parolees in their relationship with parole officials is not based on consent. The limitation on parolees' search protections arises from the unique status of the parolee and the dual responsibilities of the parole officer to aid in parolee rehabilitation and to protect society. *See Latta,* 521 F.2d at 249–50; *see also United States v. Gordon,* 540 F.2d 452 (9th Cir.1976) (warrantless search under an invalid parole condition upheld where the actual search conformed to the constitutional standards of *Latta* ).

The second basis of invalidation, *viz.* that the parole officer was a "stalking horse" for the police in the search, presents a more difficult issue. Officer Kenan was not a "stalking horse" if he, rather than the police, initiated the search in the performance of his duties as a parole officer. *Latta,* 521 F.2d at 247; *see Smith v. Rhay,* 419 F.2d 160, 162–63 (9th Cir.1969); *United States v. Hallman,* 365 F.2d 289, 292 (3d Cir.1966).

■ This is a question of fact subject to the "clearly erroneous" standard of review, even though the ultimate issue of whether the search conforms to the Fourth Amendment presents a mixed question of fact and law. *United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 789, 72 L.Ed.2d 66 (1982).

■ The district court's questioning and the facts thereby adduced indicate that the district court properly found that the parole officer independently initiated both parole searches. McManamy was formally under parole officer Kenan's supervision before the contested search was authorized. Parole officer Kenan also had worked previously in Jarrad's parole, and was authorized by Jarrad's individual parole officer to act in the case. Due to his work on both defendants' cases prior to the contested searches, parole officer Kenan had an adequate knowledge of the suspicions regarding the defendants' involvement in the robberies to independently determine the necessity for the searches in carrying out his duties. The district court could conclude from the evidence presented that the police officers became involved in the searches only upon parole officer Kenan's request for assistance.

Appellants argue that the parole searches were not initiated by officer Kenan because he became involved only after a police investigation of the robberies was already underway. Parole and law enforcement officials frequently cooperate in the course of their work. Parole officers often receive information concerning their parolees that is uncovered in police criminal investigations. The fact that police investigation of the bank robberies in this case preceded the involvement of parole officials does not in itself indicate that the search was initiated by police officers.

Appellants cite *Smith v. Rhay,* 419 F.2d 160 (9th Cir.1969), in support of their argument that parole officer Kenan acted solely as the agent of investigating police officers. The situation in the present case, however, is distinguishable from that in *Smith.* In *Smith,* the parole officer was enlisted by the police to locate the parolee as part of their criminal investigation. The police officers then accompanied the parole officer on the search at their own request. *Id.* at 162–63. In contrast, investigating detectives in the present case were asked by parole officer Kenan to search the impounded car and to assist in the search of McManamy's residence. *See* Appellant's Excerpt of Record 35–42.

Based on the evidence presented at the suppression hearing, the district court correctly concluded that the two contested warrantless searches were initiated by parole officer Kenan and that they were valid parole searches. The district court's refusal to bar evidence discovered in these searches was, therefore, without error.

## B. The Challenge to the In-Court Identification of Defendant Jarrad

Defendant Jarrad contends that the trial court erred by denying his motion in limine to bar an in-court identification of him by a witness. Jarrad alleges the in-court identification was "tainted" by comments from a detective during a pretrial photospread identification session. Following her pretrial identification of the defendant, the witness, when she appeared frightened, was told by the detective that "they were in custody." The defendant argues that the remark suggested to the witness that her identification was correct, and that the remark therefore so tainted the witness' later in-court identification that "a very substantial likelihood of irreparable misidentification" was raised, depriving the defendant of due process. *See Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

 The presence of impermissible taint is determined by weighing the reliability of the in-court identification against the corrupting tendencies of the pretrial identification procedure. *Ponce v. Cupp*, 735 F.2d 333, 337–38 (9th Cir.1984); *United States v. Field*, 625 F.2d 862, 867 (9th Cir.1980). At issue is whether the in-court identification is the product of observations at the time of the crime or impressions made during suggestive pretrial procedures. *Field*, 625 F.2d at 866. Relevant indicia include factors such as the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the level of accuracy of any prior description, the strength of the witness'

confidence at the pretrial identification, and the length of time between the crime and the confrontation. *Field*, 625 F.2d at 866–67 (citing factors in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)).[1]

 Whether reviewed under a "de novo" or "clearly erroneous" standard,[2] the district court did not err in permitting the in-court identification. The witness saw the defendant for a period of three to four seconds from a distance of forty-five feet. She got a clear view of the defendant's face and build. The pretrial identification took place about three weeks after the incident. Most importantly, the witness expressed a high degree of confidence, "95%," as to both her pretrial and in-court identifications. Moreover, the witness' pretrial identification of the defendant occurred before the allegedly suggestive comment was made. On the other hand, the improper influence claimed, the detective's statement to the witness that "they were in custody," is too weak to carry the weight Jarrad assigns to it. The statement could have referred to all or some of the photographed individuals. Support for the insignificance of the comment is furnished by the fact that, at trial, the witness did not even recall the pretrial statement made by the detective.

Viewing the "totality of the circumstances," *Manson v. Brathwaite*, 432 U.S. 98, 104, 97 S.Ct. 2243, 2247, 53 L.Ed.2d 140 (1977), the in-court identification was reliable despite the ambiguous remarks made by the detective following the pretrial identification.[3] The district court did not err in

---

1. Although the examination to determine admissibility centers on the reliability of the *in-court* identification, the witness' certainty at the pretrial identification is probative of the reliability of the witness' subsequent in-court identification and the effect of the allegedly tainting pretrial remarks. *See Field*, 625 F.2d at 868–69 n. 2.

2. Under the "functional analysis" set forth in *McConney*, 728 F.2d at 1202–04, the reliability of the pretrial identification is a mixed question of law and fact to which a de novo standard of review may be appropriate.

3. The identification in this case is clearly more reliable and less tainted than that held inadmissible in *United States v. Field*. The witness in *Field* viewed the robber twice during the crime for a few seconds from a distance of twenty feet, was unable to make a positive pretrial identification from photographs, and gave a pretrial description of the robber that did not match the defendant. Throughout the period before the in-court identification, the witness in *Field* discussed the robbery with other witnesses. She also admitted that she saw the defendant before trial in the courthouse hallway, handcuffed, suggesting to her that the defendant was

admitting the in-court identification by the witness.

## C. The Hearsay Objection and Confrontation Clause Challenge to the FBI Agent Identification Testimony

During one of the bank robberies an accomplice, Charles Rutan, was wounded by a shotgun used in the commission of the crime. Two men dropped Rutan off at Parkview Hospital for treatment of his wound. Pamela Bowery was working at Parkview Hospital at the time. When called as a witness by the government at Jarrad's trial, Ms. Bowery testified that she was shown a photospread while FBI Special Agent John Knehans and others were present. However, she denied having identified any of the pictures as the defendant, Jarrad. Jarrad's counsel declined to cross-examine Ms. Bowery. Later that day at trial, the government called Agent Knehans as a witness. He testified that, at the pretrial photospread identification session, Ms. Bowery indicated that Jarrad's picture was "similar to or reminded her of" one of the men who brought Rutan in for treatment. Jarrad's counsel raised a hearsay objection which the district court overruled. Jarrad's counsel cross-examined Agent Knehans, but did not recall Ms. Bowery for cross-examination regarding her purported identification of Jarrad.

Jarrad asserts that the district court erred in admitting, over the defense hearsay objection, the testimony of FBI Agent Knehans. The admission of testimony is challenged on two grounds. First, Jarrad claims that Federal Rule of Evidence 801(d)(1)(C) was improperly applied by the district court to admit the testimony of Agent Knehans under the hearsay exception of that rule. Second, Jarrad alleges that his Sixth Amendment confrontation rights were violated because Ms. Bowery's denial of the identification testified to by Agent Knehans effectively prevented

meaningful cross-examination of her regarding the purported identifying statements.

### 1. The Hearsay Objection

■ The district court's admission of statements over hearsay objections is reviewed for abuse of discretion. *United States v. McClintock*, 748 F.2d 1278, 1291 (9th Cir.1984).

■ Rule 801(d)(1)(C) of the Federal Rules of Evidence declares: "A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is ... one of identification of a person made after perceiving him." This Circuit has held that this rule permits "a witness to testify regarding identifications made by another witness." *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir.1981). In *Elemy*, the court rejected a similar hearsay challenge and found that compliance with the rule eliminates the major danger of hearsay testimony. Where, as here, both the agent and the witness testify and are available for cross-examination, the statement of identification is not hearsay. *Id.* According to the *Elemy* court, the rule was intended to solve the problem of a witness who identifies a defendant before trial, but then at trial refuses to acknowledge the identification because of fear of reprisal. *Id.* Consequently, the district court correctly overruled the defendant's hearsay objection to Agent Knehan's testimony.

### 2. Confrontation Clause Violation

Jarrad also contends that the admission of Agent Knehan's testimony under the hearsay exception violated his Sixth Amendment confrontation rights. Although the trial record does not indicate that the confrontation issue was preserved for review by a proper objection at trial,[4]

the man who robbed her. *Field*, 625 F.2d at 868–69.

**4.** *See United States v. Ordonez*, 737 F.2d 793, 799 (9th Cir.1984); *United States v. Foster*, 711 F.2d

871, 881 n. 4 (9th Cir.1983), *cert. denied,* ⸻ U.S. ⸻, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *United States v. Whitten*, 706 F.2d 1000, 1018 n. 7 (9th Cir.1983), *cert. denied,* ⸻ U.S. ⸻, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *United States*

we have discretionary power to review unpreserved plain errors affecting substantial rights. Fed.R.Crim.Proc. 52(b); *Foster*, 711 F.2d at 881 n. 4.

We conclude, however, that no plain error occurred. The error, if any, was "harmless beyond a reasonable doubt." *Traylor*, 656 F.2d at 1333. Where the alleged error is harmless, plain error does not exist and review is unwarranted. *See United States v. O'Connor*, 737 F.2d 814, 821 & n. 6 (9th Cir.1984); *Traylor*, 656 F.2d at 1333. In applying this standard, the magnitude of the alleged error is judged in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from the error. *See Traylor*, 656 F.2d at 1333; *see also United States v. Berry*, 627 F.2d 193, 199 (9th Cir.1980) ("Plain error is not determined in a vacuum. The prejudicial nature of unobjected-to error must be determined by reference to the whole case.") (citation omitted), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). Harmless error may be found where other "substantial, independent and credible evidence" of the defendant's guilt is presented, *United States v. Wilson*, 690 F.2d 1267, 1275 (9th Cir.1982), *cert. denied*, — U.S. —, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), which "overwhelm[s] whatever incriminating aspects the [inadmissible] statements might have had if considered in isolation," *O'Connor*, 737 F.2d at 821.

In this case, the alleged extrajudicial statement identifying Jarrad, as testified to by Agent Knehans, was weak. Knehans claimed Ms. Bowery "made an indication that [the photograph of Jarrad] was similar to or reminded her of one of the two men" she saw at the hospital. In direct contradiction to Knehan's testimony was Ms. Bowery's own testimony, flatly denying that any of the pictures she viewed resembled Jarrad. She also denied that she pointed to or named any of the photograph numbers at the photospread session. On the other hand, there was other, much stronger evidence placing Jarrad at the

scene of the crime. Strong testimony from the accomplice to the crime, Charles Rutan, as well as testimony from other identifying witnesses, clearly implicated Jarrad in the bank robberies.

The testimony of Agent Knehans, viewed within the entirety of the case, did not prejudice the jury's verdict. There was no plain error, and therefore review by this court is unwarranted.

AFFIRMED.

*v. Traylor*, 656 F.2d 1326, 1333 & n. 6 (9th Cir.1981).