STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Charles J. HAJICEK, Defendant-Respondent.

Supreme Court

*No. 98–3485–CR. Oral argument October 5, 2000.—Decided January 17, 2001.*

2001 WI 3

(Also reported in 620 N.W.2d 781.)

For the plaintiff-appellant-petitioner the cause was argued by *Jennifer E. Nashold*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-respondent there was a brief by *Bruce J. Rosen, Susan C. Blesener* and *Pellino, Rosen, Mowris & Kirkhuff, S.C.*, Madison, and oral argument by *Bruce J. Rosen*.

¶ 1.   N. PATRICK CROOKS, J.   The petitioner, the State of Wisconsin, seeks review of a published decision by the court of appeals, *State v. Hajicek*, 230 Wis. 2d 697, 602 N.W.2d 93 (Ct. App. 1999), which affirmed a La Crosse County Circuit Court order granting a motion to suppress evidence. The circuit court, Judge Dennis G. Montabon presiding, found that the evidence, obtained during a warrantless search of the residence of the respondent, Charles J. Hajicek (Hajicek), was the result of an unlawful police search, not a permitted probation search, as the State claimed. The court of appeals affirmed, holding that the circuit court's determination that the search of Hajicek's residence was a police search was not clearly erroneous.

¶ 2.   We reverse. We hold that the determination of whether a search is a police or probation search is a question of constitutional fact reviewed according to a

352

two-step process. First, we review the circuit court's findings of historical fact under the clearly erroneous standard. Second, we review the circuit court's determination of constitutional fact *de novo*. We apply this two-step standard of review and hold that the search of Hajicek's residence was a probation search.

■

¶ 3. The determination that the search of Hajicek's residence was a probation search is not the end of our inquiry. We must also determine whether the search, as a probation search, was reasonable. Such a search is reasonable if the probation officer has "reasonable grounds" to believe that a probationer has contraband. In applying that standard, we hold that the probation search of Hajicek's residence was reasonable.

I

¶ 4. In the summer of 1997, Hajicek was on probation with minimal supervision due to a 1995 conviction of possession of marijuana with intent to deliver. On August 20, 1997, Hajicek's probation officer, Lynn Hightire (Hightire), received an anonymous tip that Hajicek was involved in drug use, drug trafficking, or both. Shortly after receiving the tip, Hightire ordered a urinalysis for Hajicek. On August 28, 1997, Hightire confirmed the information contained in the tip with the La Crosse County Sheriff's Department and forwarded Hajicek's file to the Corrections Supervisor in La Crosse County, William Hammes (Hammes).

¶ 5. Hammes decided to conduct a search of Hajicek's residence. On approximately August 28, 1997, Hammes contacted Investigator Kurt Papenfuss (Papenfuss) of the La Crosse County Sheriff's Depart-

ment and Special Agent Jim Sielehr (Sielehr) of the Wisconsin Department of Justice, Division of Narcotics Enforcement (DNE) to verify the information contained in the tip. Papenfuss and Sielehr told Hammes that the DNE was investigating Hajicek and searching Hajicek's garbage for evidence of drug trafficking in order to obtain a search warrant. Sielehr asked Hammes to delay his search so that the DNE could continue its investigation. Hammes agreed, and, during the delay of less than four weeks, did not contact Hajicek or order a urinalysis for him.

¶ 6.   On September 24, 1997, Papenfuss, Sielehr, and DNE Special Agent Peter M. Thelen (Thelen) contacted Hammes and told him that the DNE had failed to obtain sufficient evidence for a search warrant of Hajicek's residence. Hammes told Papenfuss that he would proceed with his search of Hajicek's residence and asked Papenfuss for assistance with the search. Papenfuss agreed to assist. Fifteen minutes before the search, Papenfuss notified the assistant district attorney of the impending search.

¶ 7.   Hammes, Papenfuss, Sielehr, Thelen, and probation agent Michael Johnson (Johnson) went to Hajicek's residence. When Hajicek answered the door, Hammes identified himself and told Hajicek that he was there to conduct a search of the residence. Before Hammes and Johnson proceeded with the search, Papenfuss and Sielehr secured Hajicek's residence by walking through the house. Sielehr and Thelen watched Hajicek as Hammes and Johnson conducted the search. Papenfuss followed Hammes as Hammes searched Hajicek's bedroom. After Hammes found the drug Percocet in Hajicek's bedroom, Hammes placed Hajicek on a probation hold for possession of the Percocet. Sielehr then placed Hajicek under arrest.

¶ 8.  Hammes asked Hajicek if there was any marijuana in the residence. Hajicek told Hammes about a duffel bag in the garage that contained approximately seven and one half pounds of marijuana. After Hammes searched the garage and found the marijuana, the law enforcement officers decided to take Hajicek to jail and then to obtain a search warrant. In the meantime, Hammes searched Hajicek's truck and found a large amount of cash. Thelen was present during the search of the truck.

¶ 9.  Law enforcement officers returned to Hajicek's residence with a search warrant. Based upon the evidence found during the execution of the initial search warrant, they later obtained two additional search warrants.

¶ 10.  On November 3, 1997, Hajicek was charged with five felony drug offenses and one misdemeanor drug offense.[1] On December 1, 1997, Hajicek moved to suppress the evidence found as a result of Hammes's and Johnson's search of his residence and the subse-

---

[1] The five felony counts are as follows: (1) possession of narcotic controlled substance with intent to deliver while within 1000 feet of certain places as drug repeater in violation of Wis. Stat. § 961.41(1m)(a); (2) possession of marijuana with intent to deliver within 1000 feet of certain places as drug repeater in violation of Wis. Stat. § 961.41(1m)(h)3; (3) possession of cocaine within 1000 feet of certain places as drug repeater in violation of Wis. Stat. § 961.41(3g)(c); (4) possession of a Schedule II narcotic controlled substance while within 1000 feet of certain places as drug repeater in violation of Wis. Stat. § 961.41(3g)(a)1; and (5) possession of a Schedule I narcotic controlled substance while within 1000 feet of certain places as drug repeater in violation of Wis. Stat. § 961.41(3g)(a)1.

The misdemeanor charge was for possession of Schedule IV controlled substance while within 1000 feet of certain places as an habitual criminal in violation of Wis. Stat. § 961.41(3g)(b).

quent searches by the law enforcement officers. The circuit court granted Hajicek's motion, concluding that the search of Hajicek's residence was an unlawful police search and that the evidence was obtained in violation of the Fourth Amendment:

¶ 11. The circuit court concluded that the search was a police search based on the following five findings of historical fact: (1) the law enforcement officers dictated the timing of the search because Hammes delayed the search at the request of law enforcement; (2) the law enforcement officers that participated in the search were the same officers that failed to obtain a search warrant during their investigation of Hajicek; (3) the law enforcement officers notified the assistant district attorney before conducting the search; (4) the law enforcement officers and the probation officers both failed to document their communications regarding the delay of Hammes' search; and (5) Hammes did not carry out the objectives of probation supervision during the delay of the search, since he failed to supervise Hajicek and to order a urinalysis of him. The circuit court determined that these five findings of historical fact indicated that law enforcement objectives took precedence over probation objectives, turning the search of Hajicek's residence into a police search.

¶ 12. The court of appeals affirmed the circuit court's suppression order. The court of appeals concluded that the determination of whether a search is a police or probation search is a question of historical fact. The court of appeals relied on *State v. Griffin*, 131 Wis. 2d 41, 388 N.W.2d 535 (1986), *aff'd, Griffin v. Wisconsin*, 483 U.S. 868 (1987), and *State v. Flakes*, 140 Wis. 2d 411, 410 N.W.2d 614 (Ct. App. 1987), to support its conclusion. According to the court of appeals, the fact that both opinions use the word "find-

ing" to describe the determination of whether a search is a police or probation search implies that it is a question of historical fact. The court of appeals also relied on *United States v. Jarrad*, 754 F.2d 1451 (9th Cir. 1985) and *United States v. Richardson*, 849 F.2d 439 (9th Cir. 1988). In both cases the Ninth Circuit held that the determination of whether a search is a police or probation search is a question of fact reviewed under a clearly erroneous standard. *Jarrad*, 754 F.2d at 1454; *Richardson*, 849 F.2d at 441.[2]

¶ 13.  The court of appeals treated the circuit court's determination that the search of Hajicek's residence was a police search as a question of historical fact, and held that the determination was not clearly erroneous. According to the court, there was sufficient evidence in the record to support the five findings of historical fact relied on by the circuit court.

II

¶ 14.  The first issue we address concerns the standard of review. The determination of whether a search is a police or probation search presents a question of constitutional fact. A question of constitutional fact is "one whose determination is 'decisive of constitutional rights.' " *State v. Martwick*, 2000 WI 5, ¶ 17, 231 Wis. 2d 801, 604 N.W.2d 552 (citations omitted). The United States Supreme Court has stated that constitutional facts are "issues which, though cast in the form of determinations of fact, are the very issues to review

---

[2] In *United States v. Jarrad*, the court used the phrase "clearly erroneous" to describe the standard of review. 754 F.2d 1451, 1454 (9th Cir. 1985). In *United States v. Richardson*, the court cited to *Jarrad* for the standard of review but used the phrase "clear error." 849 F.2d 439, 441 (9th Cir. 1988).

[for] which this Court sits." *Watts v. Indiana*, 338 U.S. 49, 51 (1949). In *Watts*, the Court held that the voluntariness of a confession is a question of constitutional fact, though cast in the form of historical fact. 338 U.S. at 51–52. The Court held that the determination of voluntariness is a question of constitutional fact because the determination requires the application of a constitutional standard to uncontroverted facts. *Id.* at 51. Likewise, we conclude that the determination of whether a search is a police or probation search requires a conclusion based on uncontroverted facts. Consequently, the determination of whether a search is a police or probation search is a question of constitutional fact. It is a question whose "determination is 'decisive of constitutional rights.' " *Martwick*, 2000 WI 5 at ¶ 17.

¶ 15.   A question of constitutional fact presents a mixed question of fact and law reviewed with a two-step process. *Martwick*, 2000 WI 5 at ¶ 16; *State v. Phillips*, 218 Wis. 2d 180, 189, 577 N.W.2d 794 (1998). First, an appellate court reviews the circuit court's findings of historical fact under the clearly erroneous standard.[3] *Martwick*, 2000 WI 5 at ¶ 18. Second, an appellate court reviews the circuit court's determination of constitutional fact *de novo*. *Id.*

¶ 16.   In *Martwick*, we faced the issue of the standard of review in a curtilage case. *Id.* at ¶ 16. In concluding that review of a curtilage determination required a two-step process, we relied on *Ornelas v. United States*, 517 U.S. 690 (1996). In *Ornelas*, the United States Supreme Court held that the determination of whether reasonable suspicion or probable cause

---

[3] The phrase "clearly erroneous" is used to describe the standard of review for findings of fact in Wis. Stat. § 805.17(2).

exist to justify a warrantless search requires a two-step standard of review. 517 U.S. at 699. The Court reviewed the determination of historical facts, the events leading up to the search, for clear error. *Id.* at 696.[4] The Court then reviewed the determination of whether the historical facts amount to reasonable suspicion or probable cause *de novo*. *Id.* at 696–97. The Court stated that applying a deferential standard of review to a trial court's ultimate determination of probable cause or reasonable suspicion would lead to "varied results" that "would be inconsistent with the idea of a unitary system of law." *Ornelas*, 517 U.S. at 697. By contrast, the Court stated that applying an independent standard of review to the ultimate determination of reasonable suspicion and probable cause will allow appellate courts to "maintain control of, and to clarify, the legal principles." *Id.*

¶ 17.   We also relied on Wisconsin precedent for our decision in *Martwick*. We stated that independent review of questions of constitutional fact " 'provide[s] uniformity in constitutional decision-making.' " *Martwick*, 2000 WI 5 at ¶ 20 (quoting *Phillips*, 218 Wis. 2d at 194). Wisconsin courts have applied this two-step standard of review to "a variety of constitutional challenges." *Phillips*, 218 Wis. 2d at 190.[5] In addition, we noted that Wisconsin courts "traditionally appl[y] the

---

[4] In *Ornelas v. United States*, the Court stated that " 'clear error' is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies when reviewing questions of fact." 517 U.S. 690, 695 n.3 (1996).

[5] In *State v. Phillips*, we provided several examples of constitutional challenges that appellate courts review independently of a trial court's conclusion. 218 Wis. 2d 180, 190, 577 N.W.2d 794 (1998).

two-step standard of review to constitutional search and seizure inquiries." *Martwick*, 2000 WI 5 at ¶ 20.

¶ 18.    Therefore, independent review of the determination of whether a search is a police or probation search is consistent with both federal and Wisconsin precedent. Independent appellate review will provide uniformity in the decisions of whether a search is a police or probation search and will prevent varied results. In addition, independent appellate review provides guidance to litigants, lawyers, and trial courts.

¶ 19.    Hajicek contends that the court of appeals was correct in holding that the determination of whether a search is a police or probation search is a question of historical fact. Hajicek argues that the conclusion that the search was a police search is subject only to the clearly erroneous standard of review. Hajicek presents three arguments that we will address in turn.

¶ 20.    First, Hajicek argues that Wisconsin precedent supports the historical fact conclusion. In both *State v. Griffin* and *State v. Flakes*, the word "finding" was used to describe the determination that a search was a lawful probation search. While Hajicek concedes that the word "finding" does not always refer to historical facts, Hajicek argues that in both cases the court implied that the determination of whether a search is a police or probation search is a question of historical fact because the court did not apply a *de novo* standard of review.

¶ 21.    We reject this argument. The word "find" can refer to a historical fact or to a legal conclusion, as Hajicek concedes. However, Hajicek is incorrect that *State v. Griffin* and *State v. Flakes* implied that the probation search determination is a question of histori-

cal fact. Neither *State v. Griffin* nor *State v. Flakes* clearly delineates the proper standard of review to apply to the conclusion that a search is either a police or probation search.

¶ 22. Second, Hajicek argues that we should be persuaded by the decisions of the United States Court of Appeals for the Ninth Circuit. According to Hajicek, the Ninth Circuit has held that the determination of whether a search is a police or probation search is a question of fact subject to the clearly erroneous standard of review. Hajicek relies on two Ninth Circuit cases that state that the determination of whether a probation officer acted as a "stalking horse" for police is a "question of fact, reviewed for clear error."[6] *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir. 1988)(citing *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir. 1985)). A "stalking horse" is "[s]omething used to cover one's true purpose; a decoy." *The American Heritage Dictionary* 1751 (3d ed. 1992). In the context of determining whether a search is a police or probation search, a "stalking horse" is a probation officer who uses his or her authority "to help the police evade the [F]ourth [A]mendment's warrant requirement." *United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991).

¶ 23. We also reject this argument. As Hajicek concedes, Ninth Circuit precedent is not binding on this court. In addition, we decline to follow the Ninth Circuit's application of the clearly erroneous standard of review because both Ninth Circuit cases state that the "stalking horse" determination depends solely on

---

[6] The "stalking horse" determination is the same as the determination of whether a search is a police or probation search. If a probation officer is a "stalking horse" for police, then the search is a police search.

the single fact of who initiates the search. *Richardson*, 849 F.2d at 441 (citing *Jarrad*, 754 F.2d at 1454). We apply *de novo* review because the determination of whether a search is a police or probation search requires a conclusion based on an analysis of all the facts surrounding the search.

¶ 24.  Third, Hajicek argues that the determination of whether a search is a police or probation search is not a question of constitutional fact because there is no constitutional principle to apply. Hajicek relies on our decision in *State v. McMorris*, 213 Wis. 2d 156, 570 N.W.2d 384 (1997), to support the proposition that the two-step standard of review requires application of a uniform constitutional principle.

¶ 25.  Our holding in the instant case is consistent with our holding in *McMorris*. In *McMorris*, we held that the determination of "whether an independent source exists for an in-court identification made after a lineup that violated an accused's Sixth Amendment right to counsel" is a question of constitutional fact that requires the two-step standard of review. 213 Wis. 2d at 165. To support our holding, we compared the issue of independent source for an in-court identification to the issue of suppression of evidence. *McMorris*, 213 Wis. 2d at 164–65.[7] Likewise, we com-

---

[7] In *State v. McMorris* we stated:

[t]his court has not previously discussed the applicable standard of review in determining whether an independent source exists for an in-court identification made after a lineup that violated an accused's Sixth Amendment right to counsel. The court has, however, considered the standard of review applicable to an analogous issue of attenuation in the Fourth Amendment context. In *State v. Anderson*, 165 Wis. 2d 441, 447–48, 477 N.W.2d 277 (1991), this court characterized as a constitutional fact the question whether evidence should be suppressed as the fruit of a prior illegal search

pare the police or probation search determination to the curtilage determination in *Martwick*.[8]

¶ 26.    In summary, we hold that the determination of whether a search is a police or probation search is a question of constitutional fact that requires application of a two-step standard of review.

## III

¶ 27.    We now apply the two-step standard of review to the determination of whether the search of Hajicek's residence was a police or probation search. First, we review the circuit court's findings of historical fact under the clearly erroneous standard. Second, we review the circuit court's conclusion that the search was a police search *de novo*.

¶ 28.    We apply the clearly erroneous standard to the circuit court's findings of historical fact. The five

---

or whether the evidence was sufficiently attenuated so as to be purged of the taint.

213 Wis. 2d 156, 164–65, 570 N.W.2d 384 (1997).

[8] Both the police or probation search determination and the curtilage determination are questions of constitutional fact because both are decisive of constitutional rights. The curtilage determination is decisive of constitutional rights because "the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301 (1987). Likewise, the police or probation search determination is decisive of constitutional rights because the nature of the search determines the scope of Fourth Amendment protection. A police search must be based on a warrant issued upon probable cause or an exception to the warrant requirement, while a probation search must be based on reasonable grounds.

findings of historical fact that the circuit court relied on to conclude that the search was a police search are not clearly erroneous. There is support in the record for each of the five findings which are: (1) the law enforcement officers dictated the timing of the search because Hammes delayed the search at the request of law enforcement; (2) the law enforcement officers that participated in the search were the same officers that failed to obtain a search warrant during their investigation of Hajicek; (3) the law enforcement officers notified the assistant district attorney before the search; (4) the law enforcement officers and the probation officers both failed to document their communications regarding the delay of Hammes' search; and (5) Hammes did not carry out the objectives of probation supervision during the delay of the search, since he failed to supervise Hajicek and to order a urinalysis for him. The circuit court relied on these five findings of historical fact to conclude that the search of Hajicek's residence was a police search.

¶ 29. We apply *de novo* review to the circuit court's conclusion that the search of Hajicek's residence was a police search. We do not agree with the circuit court's conclusion that the search was a police search. We rely on the circuit court's entire findings of historical fact regarding the events during the search of Hajicek's residence to conclude that the search was a probation search. Before Hammes and Johnson proceeded with the search, Papenfuss and Sielehr secured the residence by walking through the house. As Hammes and Johnson conducted the search of Hajicek's residence, Sielehr and Thelen watched Hajicek. Hammes conducted the search that resulted in the discovery of Percocet in Hajicek's bedroom and marijuana in Hajicek's garage. The entire findings of

historical fact regarding the events during the search demonstrate that probation officers Hammes and Johnson conducted the search and law enforcement officers Papenfuss, Sielehr, and Thelen were present only for protective purposes. Thus, the entire findings of historical fact regarding the events during the search of Hajicek's residence support the conclusion that the search was a probation search.

¶ 30. In addition, our conclusion that the search of Hajicek's residence was a probation search is consistent with Wisconsin precedent. In *State v. Griffin*, we held that a search was a probation search because the probation officers conducted the search while the police were present only for protection purposes. 131 Wis. 2d 41, 62–63, 388 N.W.2d 535 (1986), *aff'd, Griffin v. Wisconsin*, 483 U.S. 868 (1987). The probation officers searched Griffin's kitchen, bedroom, and living room while the police officers stayed with Griffin. *Id.* at 56–57. In the instant case, the probation officers searched Hajicek's bedroom and garage while the law enforcement officers stayed with Hajicek.

¶ 31. Hajicek argues that the circuit court was correct in concluding that the search was a police search based on the five findings of historical fact mentioned above. The circuit court determined that these five findings of historical fact indicate that law enforcement objectives took precedence over probation objectives, turning the search of Hajicek's residence into a police search.

¶ 32. We do not find this argument persuasive. The five findings of historical fact relied on by the circuit court do not necessarily lead to the conclusion that the search of Hajicek's residence was a police search. The five findings of historical fact clearly indicate that probation officer Hammes was cooperating with the

law enforcement investigation of Hajicek, but cooperation does not change a probation search into a police search.

¶ 33.  Cooperation with law enforcement for the purpose of preventing crime is a specific goal of probation supervision. Wis. Admin. Code § DOC 328.01(5) (June, 1999). The regulations in the Wisconsin Administrative Code provide that a specific goal of probation supervision is "[t]o cooperate with other public and private agencies in activities for the purpose of prevention of crime and to provide alternatives to institutionalization." *Id.* In addition, Wisconsin precedent supports probation searches based on cooperation between probation officers and law enforcement. For example, the fact that the police provide the information that leads to a probation search does not make the probation search unlawful. *State v. Griffin*, 131 Wis. 2d at 57; *State v. Flakes*, 140 Wis. 2d at 427. Therefore, Hammes' cooperation with law enforcement does not change the search of Hajicek's residence from a probation search to a police search.[9]

¶ 34.  In summary, the search of Hajicek's residence was a probation search. We reach this conclusion because the probation officers conducted the search while the law enforcement officers were present at the search only for protective purposes, consistent with our holding in *State v. Griffin*.

---

[9] In addition, the less than four-week delay of the search is consistent with the terms of Hajicek's probation supervision status. At the time of the search, Hajicek was on probation with minimum supervision. Minimum supervision requires only that the probation officer meet with the probationer once every 90 days. Wis. Admin. Code § DOC 328.03(22) (June, 1999).

## IV

¶ 35.   We now turn to the question of whether the search of Hajicek's residence was reasonable. All searches and seizures, including probation searches, must be reasonable. U.S. Const. amend. IV; Wis. Const. art. I, § 11.[10] A reasonable search is one supported by a warrant or by probable cause. *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). A warrantless search is unreasonable unless the search falls under a lawful exception. *State v. Griffin*, 131 Wis. 2d 41, 50, 388 N.W.2d 535 (1986)(citing *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973)), *aff'd, Griffin v. Wisconsin*, 483 U.S. 868 (1987). The state bears the burden of proving that an exception applies to any given search. *State v. Pallone*, 2000 WI 77, ¶ 29, 236 Wis. 2d 162, 613 N.W.2d 568.

---

[10] The Fourth Amendment to the United States Constitution states:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution states:

> [t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Both the United States Constitution and the Wisconsin Constitution guarantee the right to be free from unreasonable searches and seizures. We ordinarily interpret Article I, Section 11 of the Wisconsin Constitution in accordance with the United States Supreme Court's interpretation of the Fourth Amendment. *Phillips*, 218 Wis. 2d at 195.

¶ 36. There is an exception to the warrant requirement for probation searches. *Griffin v. Wisconsin*, 483 U.S. 868, 875–76 (1987). An exception to the warrant requirement exists when " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Id.* at 873 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985)(Blackmun, J., concurring)). In *Griffin v. Wisconsin*, the United States Supreme Court upheld the constitutionality of a warrantless search of a probationer's home by probation officers. 483 U.S. at 872. The special need justifying warrantless probation searches is the need to supervise probationers. *Id.* at 875. By supervising a probationer, the probation officer guarantees that the probationer observes the restrictions placed upon the probationer's liberty during the probation. *Id.* "These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." *Id.* The special need for ensuring that probationers are rehabilitated and that the public is protected creates an exception to the warrant or probable cause requirement for reasonable searches. *Id.* at 875–76.

¶ 37. The exception to the warrant requirement for probation searches provides that a probation officer may search a probationer's residence if the probation officer has reasonable grounds to believe that a probationer has contraband. *State v. Griffin*, 131 Wis. 2d 41, 60, 388 N.W.2d 535 (1986), *aff'd, Griffin v. Wisconsin*, 483 U.S. 868 (1987). In *State v. Griffin*, we held that a probation officer had reasonable grounds to search Griffin's residence based on the Wisconsin Administrative Code regulations for the supervision of

probationers. 131 Wis. 2d at 61–62. The regulations in the Wisconsin Administrative Code set forth a list of factors to be considered in the determination of whether there are reasonable grounds for a probation search. Wis. Admin. Code § DOC 328.21(7) (June, 1999).[11]

¶ 38.    In *State v. Griffin*, the probation officer had reasonable grounds to search Griffin's residence because the probation officer received information, provided by an anonymous informant, that Griffin may have contraband in his apartment. *Id.* at 63–64 (citing Wis. Admin. Code § HSS 328.21(6)(b)).[12] In addition,

[11] The following factors are to be considered in the determination of whether a probation officer has reasonable grounds to conduct a probation search:

(a) The observations of staff members. (b) Information provided by informants. (c) The reliability of the information provided by an informant. In evaluating the reliability of the information, the [probation officer] shall give attention to the detail, consistency and corroboration of the information provided by the informant. (d) The reliability of the informant. In evaluating the informant's reliability, attention shall be given to whether the informant has reason to supply inaccurate information. (e) The activity of the [probationer] that relates to whether the [probationer] might possess contraband or might have used or be under the influence of an intoxicating substance. (f) Information provided by the [probationer] that is relevant to whether the [probationer] has used, possesses or is under the influence of an intoxicating substance or possesses any other contraband. (g) The experience of a staff member with that [probationer] or in a similar circumstance. (h) Prior seizures of contraband from the [probationer]. (i) The need to verify compliance with rules of supervision and state and federal law.

Wis. Admin. Code § DOC 328.21(7).

[12] Chapter HSS 328 was renumbered Chapter DOC 328 in April, 1990. In Chapter HSS 328, the list of factors for reasonable grounds was set forth in subsection six. In Chapter DOC 328, the list of factors for reasonable grounds is set forth in subsection seven.

the probation officer had reasonable grounds to search Griffin's residence because the informant was a Beloit detective who had no reason to provide false information. *Id.* at 64 (citing Wis. Admin. Code § HSS 328.21(6)(c) and (d)). Therefore, we held that reliable information that a probationer possesses contraband provided the reasonable grounds for a lawful probation search. *Id.*

¶ 39.  In *State v. Flakes*, 140 Wis. 2d 411, 427–28, 410 N.W.2d 614 (Ct. App. 1987), the court of appeals held that a probation officer had reasonable grounds to search Flakes' residence based on the factors provided in the Wisconsin Administrative Code. The court held that a probation officer had reasonable grounds to conduct a probation search based on information provided by a police officer. *Id.* (citing Wis. Admin. Code § HSS 328.21(6)). The police informed Flakes' probation officer about an arrest for marijuana delivery, about their suspicion that Flakes had more marijuana in his apartment, and that Flakes had refused consent for the police to search his apartment. *Id.* at 427. The court held that detailed information from a reliable source about Flakes' activities, combined with the probation officer's knowledge of Flakes' history, provided the reasonable grounds for a probation search of Flakes' apartment. *Id.* at 427–28 (citing Wis. Admin. Code § HSS 328.21(6)(b), (c), (d), (e) and (g)).

¶ 40.  In the instant case, probation officer Hammes had reasonable grounds for a probation search of Hajicek's residence based on the factors provided in the Wisconsin Administrative Code. Hammes searched Hajicek's residence based on information provided by an informant. Wis. Admin. Code § DOC 328.21(7)(b) (June, 1999). Hammes received an anonymous tip that Hajicek was involved in drug use, drug trafficking, or

both. Hammes searched Hajicek's residence because the information contained in the anonymous tip was reliable and the informant was reliable. Wis. Admin. Code § DOC 328.21(7)(c) and (d) (June, 1999). The La Crosse County Sheriff's Department and the DNE verified the information contained in the anonymous tip by telling Hammes that the information was similar to information that they had from their investigation of Hajicek. Following the application of the factors for reasonable grounds applied in *State v. Griffin* and *State v. Flakes*, we conclude that reliable information from a reliable source that a probationer possesses contraband provides reasonable grounds for a probation search of the probationer's residence.

¶ 41.    There is nothing in the record to persuade us that Hammes did not have reasonable grounds for the probation search of Hajicek's residence. The fact that Hammes delayed his search at the request of law enforcement does not affect the reasonable grounds for the search. There is no requirement in the regulations in the Wisconsin Administrative Code that a probation officer must search a probationer's residence as soon as the probation officer has the reasonable grounds to do so. The state has satisfied its burden in this case.

V

¶ 42.    In conclusion, we hold that the determination of whether a search is a police or probation search is a question of constitutional fact reviewed with a two-step process. First, an appellate court reviews the circuit court's findings of historical fact under the clearly erroneous standard. Second, an appellate court reviews the circuit court's finding of constitutional fact *de novo*. We apply the two-step standard of review and

371

hold that the search of Hajicek's residence was a probation search. We further hold that the probation search of Hajicek's residence was reasonable. Accordingly, we reverse the court of appeals decision that affirmed the circuit court's order granting Hajicek's motion to suppress the evidence obtained in the search.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the circuit court.

¶ 43.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I agree with the circuit court and court of appeals and dissent on three grounds.

¶ 44.   First, I agree with the court of appeals that the circuit court's determination that the search of the defendant's home was a police search should be reviewed under the clearly erroneous standard. The majority opinion's adoption of the *de novo* standard contravenes Wisconsin and federal law.

¶ 45.   Second, whatever the standard of review, the search in this case was that of law enforcement. The search of the defendant's home without a warrant violated the Fourth Amendment.

¶ 46.   Third, even if it was a probation search, the search of the defendant's home without a warrant violated the Fourth Amendment under the circumstances of this case.

¶ 47.   I would affirm the court of appeals, which affirmed the circuit court's suppression order.

I

¶ 48.   Under existing Wisconsin case law, as well as the case law from other jurisdictions, the question of whether a probation officer acts as a stalking horse for

372

law enforcement officers should be reviewed under the clearly erroneous standard.

¶ 49.  First, the majority opinion's error in concluding that the question of whether a search is a police or probation search should be reviewed *de novo* is based on its erroneous characterization of the question before us as one of constitutional fact.

¶ 50.  The majority opinion explains that a question of constitutional fact has been defined as one whose determination is decisive of constitutional rights. Majority op. at ¶ 14. I agree that this is the definition of constitutional fact.

¶ 51.  Unfortunately the majority opinion does not apply this definition in the present case. The question of whether a search is a police or probation search is not decisive of constitutional rights in this case. As the court of appeals explained and as the majority opinion recognizes, the ultimate constitutional issue, that is, the constitutional fact in this case, is whether the search (whether by a probation officer or a police officer) was reasonable and conformed to the Fourth Amendment. That ultimate constitutional fact, the reasonableness of the search, should be decided *de novo* by this court after the relevant facts are determined by the circuit court. Whether the search is by a probation officer or police officer is not a decisive constitutional determination of reasonableness; therefore, it should be treated as an historical fact to be reviewed under the clearly erroneous standard. As is evident in the majority opinion, the majority appears to have decided that it wishes to exercise *de novo* review and then labels the issue as one of constitutional fact.

¶ 52.  Second, the majority opinion blithely ignores this court's most recently adopted analytical framework for determining the appropriate standard

of review of constitutional issues. In *State v. Byrge*, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, this court explained that the difference between historical facts, constitutional facts, and mixed questions of fact and law is "fuzzy" at best. Thus the *Byrge* court decided that the standard of review of a constitutional issue should depend on the court's determination of which "judicial actor is better positioned than another to decide a matter."[1] The "best institutional actor" analysis presents a workable framework for determining the standard of review even when the issue (such as competency to stand trial) is unquestionably decisive of constitutional rights. The majority opinion ought to forthrightly adopt and apply the analysis used in *Byrge*. Instead, the majority opinion, without citing *Byrge*, much less forthrightly explaining what it is doing, applies the *Byrge* analysis in a back-handed way, justifying the creation of the new question of constitutional fact by noting that "independent appellate review" is important because it "provides guidance to litigants, lawyers, and trial courts." Majority op. at ¶ 18.

---

[1] *State v. Byrge*, 2000 WI 101, ¶ 39, 237 Wis. 2d 197, 614 N.W.2d 477. *See also State v. Garfoot*, 207 Wis. 2d 214, 234, 558 N.W.2d 626 (1997) (C.J. Abrahamson concurring) ("The standard for appellate review of an issue thus depends on a determination of whether an appellate court or a trial court is the more appropriate and competent forum to make the particular decision."); *State v. McMorris*, 213 Wis. 2d 156, 165–66, 570 N.W.2d 384 (1997) (treating the issue of independent source for in-court identification like the issue of purging evidence of the taint of illegal search as a constitutional fact; allowing independent review to enable appellate courts to flesh out the rule and provide guidance to litigants, lawyers, and trial and appellate courts and to provide uniformity in constitutional decision-making).

¶ 53. In *Byrge* the court applied the clearly erroneous standard of review to the constitutional determination of whether a defendant was competent to stand trial because "the decision pivots on factors only a trial court can appraise." *Byrge*, 237 Wis. 2d at ¶ 44. The circuit court's ability to observe the credibility and demeanor of the witnesses, stated the *Byrge* court, made the circuit court "the judicial actor best positioned to apply a legal standard to the facts." *Byrge*, 237 Wis. 2d at ¶ 44; *see also* ¶ 45.

¶ 54. I would apply the *Byrge* institutional analysis to the question at issue in this case. Whether the search of the defendant's home was a probation or a police search presents a fact-driven inquiry. Indeed, the particular circumstances of this case highlight the circuit court's essential role as fact-finder. Neither the probation officer nor the law enforcement officers kept any record of their communications regarding the defendant, leaving witness testimony as the only means of assessing the basis for this search.

¶ 55. The circuit court was in the best position to evaluate the testimony, weigh the witnesses' credibility, and determine whether this search was driven by law enforcement or probation objectives. By opting for *de novo* review, the majority opinion has rejected the circuit court's credibility assessments and weighing of the evidence.

¶ 56. Third, the majority's break from *Byrge* is even more surprising in light of the State's and majority opinion's failure to identify a single case in any jurisdiction that has treated the determination of whether a search is a probation or police search as anything other than a finding of fact subject to review under the clearly erroneous standard.

¶ 57. As the majority opinion recognizes, Wisconsin case law can be interpreted as treating this question as one of fact. Majority op. at ¶ 21.

¶ 58. Furthermore, several federal courts have applied the clearly erroneous standard of review. The majority opinion declines to follow the Ninth Circuit's standard of review, as articulated in *United States v. Richardson*, 849 F.2d 439 (9th Cir. 1988), and *United States v. Jarrad,* 754 F.2d 1451 (9th Cir. 1985). The majority contends that these cases rest on the sole issue of whether the probation officer initiated the search, whereas the majority believes a broader factual analysis is necessary. Majority op. at ¶ 23.

¶ 59. More recent Ninth Circuit cases involving probation versus police searches apply the majority opinion's broader factual analysis. Nonetheless, these cases still treat the trial court's conclusion as a question of historical fact.[2] Other federal courts have

---

[2] For example, in *United States v. Watts*, 67 F.3d 790 (9th Cir. 1995), *rev'd on other grounds*, 519 U.S. 148 (1997), the court of appeals stated that "[t]he appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives." Even with the broader fact inquiry, the standard of review remained clearly erroneous. *Watts*, 67 F.3d at 794.

followed the Ninth Circuit's lead.[3] Several state courts have also followed the Ninth Circuit.[4]

---

[3] At least two other circuits have followed the Ninth Circuit in treating the question of probation versus police search as a question of fact reviewable under the clearly erroneous standard. *See, e.g., United States v. Cardona*, 903 F.2d 60, 65 (1st Cir. 1990) ("The law will not allow a parole officer to serve as a cat's paw for the police. . . .When and if the integrity of a challenged action is controverted, the dispute is determinable as a question of fact on a case-by-case basis."); *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) ("Parole and police officers may work together, however, provided the parole officer is pursuing parole-related objectives and is not merely a 'stalking horse' for the police. . . .In this case, the district court found [the probation officer] authorized the police to carry out the challenged searches to determine if McFarland was violating his parole. This factual finding is not clearly erroneous.") (citations omitted).

[4] *See, e.g., State of Hawaii v. Proprios*, 879 P.2d 1057, 1064 (Haw. 1994) ("Notwithstanding the existence of an objectively valid probationary purpose, we hold that a warrantless probationary search is unreasonable if it is conducted for a subjectively improper purpose. As indicated previously, whether a particular search is improper 'is a question of fact subject to the clearly erroneous standard of review.' "); *State v. Cowans*, 717 N.E. 2d 298, 307 (Ohio 1999) ("Based upon the testimony presented and the trial court's assessment of the credibility of the witnesses, the trial court made a factual finding that [the probation officer] was not acting as a stalking horse for the deputies. Instead, the court found, she 'had her own objectives in conducting the search.' We are bound by that finding unless the record contains insufficient evidence to support it."); *Commonwealth v. Williams*, 692 A.2d 1031, 1037 n.11 (Pa. 1997) ("[E]vidence should be suppressed if the parole agent switches hats and acts as a 'stalking horse' for the police by circumventing the requirement for a warrant. . . .Here, the suppression court explicitly found that the parole agent who

■■■■■■■■

¶ 60. The great weight of persuasive authority belies the majority's statement, majority op. at ¶ 18, that its conclusion is consistent with federal and Wisconsin precedent. Rather, it appears that the majority opinion stands alone in creating a question of constitutional fact where none existed before.

## II

¶ 61. Whether a clearly erroneous standard or a *de novo* standard of review is applied, the circuit court correctly ruled that the probation officer "changed hats" and was serving to advance law enforcement goals, rather than probation goals.[5]

¶ 62. Law enforcement officers needed probable cause and a warrant to search the defendant's home. They had neither. The search therefore violated the Fourth Amendment.

¶ 63. The majority opinion promises guidance for how probation officers, law enforcement officers, lawyers, and courts can distinguish between a probation and police search. Majority op. at ¶ 18. The guidance appears in two short conclusory paragraphs, paragraphs 32 and 34, as follows:

> The five findings of historical fact clearly indicate
> that probation officer Hammes was cooperating

conducted the search was not acting in such a capacity. . . .[N]o evidence in the record even remotely suggests that the trial court erred in reaching this conclusion.").

[5] The circuit court correctly concluded that "[a]lthough there may be facts and exigent circumstances in a different case which would justify a probation officer's decision not to supervise a client at the behest of law enforcement, this is not such a case."

with the law enforcement investigation of Hajicek. . . .[6]

[C]ooperation does not change a probation search into a police search.[7] . . .

[T]he search of Hajicek's residence was a probation search. . .because the probation officers conducted the search while the law enforcement officers were present at the search only for protective purposes.[8]

¶ 64.   Does the majority opinion provide guidance about what constitutes acceptable "cooperation"? Does the majority opinion conclude that cooperation never changes a probation search into a police search? Clearly that cannot be so. I agree that cooperation does not of itself turn a probation search into a police search. Common sense tells us, however, that at some point cooperation may transform the probation officer into a stalking horse. At some point, the probation officer has, as the circuit court stated, "changed hats" and is serving a law enforcement rather than probationary function. Yet the opinion does not intimate that there are any limits on cooperation.

¶ 65.   Indeed, the word "cooperation" does not appropriately describe the situation here. I agree with

[6] Majority op. at ¶ 32. The circuit court's findings upon which the majority opinion bases its legal determination that a probation search occurred are as follows: Law enforcement officers dictated the timing of the search, participated in the search, and notified the assistant district attorney before the search; the police officers and probation officer failed to document their communications with each other; the probation officer did not carry out the objectives of probation supervision and failed to supervise the probationer for more than three weeks during the delay of the search. Majority op. at ¶ 28.

[7] Majority op. at ¶ 32.

[8] Majority op. at ¶ 34.

the circuit court that the probation officer "changed hats" and was serving a law enforcement rather than probationary function. The probation officer allowed law enforcement to dictate his operations. The probation officer agreed to allow law enforcement officers to interfere with ordinary probationary supervision and to delay a probationary search for more than three weeks. Law enforcement officers were not able to obtain a search warrant because their information was not good enough and then the probation officer worked with these same officers on a "probation" search looking for the same evidence as the aborted search warrant would have sought.[9]

¶ 66.  Does the majority opinion provide guidance about how to distinguish a probation search from a law enforcement search? Does the majority opinion conclude that so long as the probation officers, not the police officers, physically conduct the search with the law enforcement officers present for protective purposes, the search is a probation search? Clearly that cannot be so. Such a rule would put form over substance and make a mockery of the stalking horse doctrine. But that's what the opinion appears to say.

¶ 67.  Guidance? I think not. Puzzlement? I think so. The question the readers should ask, after reading the majority opinion, is whether they can hypothesize any realistic fact situation in which a probation officer who performs a search under the protection of the very law enforcement officers with whom they have been "cooperating" *would* be transformed into a stalking horse. I fear that no such situation exists.

¶ 68.  When the probation officer is serving law enforcement objectives, as is the case here, a search

---

[9] In most instances, in contrast to this case, law enforcement asks the probation officer to conduct a search.

warrant is necessary under the Fourth Amendment. I would therefore affirm the circuit court's suppression order.

## III

¶ 69.   Even viewing the search as a probation search, I conclude that the warrantless search of the defendant's home was unreasonable and violated the Fourth Amendment. The State bears the burden of persuasion in this case on the reasonableness of the search without a warrant.

¶ 70.   The majority opinion's conclusion that this probation search was reasonable relies on the U.S. Supreme Court's decision in *Griffin v. Wisconsin,* 483 U.S. 868 (1987), as well as the agency regulations regarding probation searches. Reliance on both of these authorities is misplaced.

¶ 71.   In *Griffin,* the Supreme Court articulated two reasons for declining to require probation officers to obtain a search warrant. Neither of these reasons applies to the facts of this case.

¶ 72.   First, the *Griffin* Court stated that "[a] warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires." *Griffin,* 483 U.S. at 876. Here, however, law enforcement officers interfered with the probation officer's plan to search the defendant's home immediately.[10] Moreover, the probation officer opted to forgo all supervisory activities in order to avoid alerting the defendant to the

---

[10] *See* circuit court order at 7 ("Although Hammes felt he had good cause to do a probation search, he did not do so at the behest of law enforcement.").

law enforcement investigation. The need to avoid interference with probationary objectives was not present in this case because law enforcement had already interfered. Therefore *Griffin*'s narrow exception to the warrant requirement does not apply.

¶ 73.   Second, the *Griffin* Court stated that "the delay inherent in seeking a warrant would make it more difficult for probation officers to respond quickly to evidence of misconduct. . .and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create. . . ." *Griffin*, 483 U.S. at 876 (citations omitted). Yet here, the probation officer allowed law enforcement to delay his intended search for more than three weeks, three weeks during which the probation officer deliberately avoided taking any action whatsoever to supervise the defendant in a manner consistent with his probationary objectives. The need to avoid delay in responding to evidence of a probationer's misconduct was not present in this case. *Griffin*'s narrow exception to the warrant requirement does not apply.

¶ 74.   The majority does not explain how the probation officer's failure to take any supervisory action whatsoever for almost a month is consistent with probationary objectives, objectives which the *Griffin* Court described as "protecting the public interest" and having in mind "the welfare of the probationer (who in the regulations is called a client)." *Griffin*, 483 U.S. at 876. When the probation officer's actions are fundamentally inconsistent with the important probationary objective of active supervision, *Griffin*'s narrow exception allowing warrantless searches that advance probationary objectives no longer applies.

¶ 75.   The majority opinion also relies on the probation officer's compliance with the Wisconsin

Administrative Code. This reliance is misplaced as well. The majority contends that the probation officer followed Wis. Admin. Code § 328.21(7)(b) in searching Hajicek's home. Majority op. at ¶ 40. Further, the majority has found that the more than three-week delay in searching the defendant's home did not violate any provision of the Wisconsin Administrative Code. Majority op. at ¶ 41.

¶ 76.  The majority opinion overlooks the fact that the probation officer violated Wis. Admin. Code § 328.30, which requires probation officers to document all of their communications regarding a case, including "maintain[ing] a chronological log of all case related contacts." Here, the defendant's probation officer documented none of his communications with law enforcement officials. When asked during the suppression hearing why he failed to document any of his communications, in violation of Wis. Admin. Code § 328.30, the probation officer answered simply, "I just didn't." The majority opinion's conclusion also ignores the uncontradicted testimony of Professor Walter Dickey, the former head of the Department of Corrections and the drafter of the precursor of the applicable Wisconsin Administrative Code rules, regarding the violations that occurred in this case.

¶ 77.  The probation officer's violations of administrative procedures further undermine the majority's conclusion that the officer was acting reasonably and in conformance with legitimate probation objectives when he searched the defendant's home without a warrant.

¶ 78.  For the reasons set forth, I dissent.

¶ 79. I am authorized to state that Justices WIL-LIAM A. BABLITCH and ANN WALSH BRADLEY join this dissent.