BLANCHARD, J.[1]
¶1 Kenneth Raney, pro se, appeals a conviction for operating while intoxicated as a first offense, in violation of WIS. STAT. § 346.63(1)(a), following a jury trial, and apparently intends to challenge an order denying his motion to suppress evidence. I affirm the forfeiture conviction and the order denying suppression for the following reasons.
¶2 Trial counsel represented Raney at the suppression hearing and trial, but he now represents himself. His briefing suffers from multiple deficiencies. Many are significant, including: undeveloped legal argument; sparse, inadequate references to legal authority; sparse, inadequate citations to the record on appeal; and no differentiation, in the course of a stream-of-consciousness reply brief, among the specific issues purportedly raised in the opening brief. I could end here, rejecting the entire appeal due to these and other failures because Raney fails to properly develop a legal argument. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (the court of appeals need not address the merits of inadequately developed arguments that do not conform to rules of appellate procedure). I cannot act as Raney's appellate counsel.
¶3 But, making the maximum allowable accommodation for Raney's pro se status, he may make a few arguments, when his assertions are interpreted in light of the record on appeal. See id . at 647 (courts may make allowances for failure to abide by briefing rules); Waushara County v. Graf , 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992) (courts may give leeway to a pro se party). Accordingly, I address his assertions as best I understand them. To the extent that Raney may intend to make other arguments that I do not directly address, I reject them on the grounds that they are inadequately briefed and lack discernable potential merit.
¶4 Pertinent background follows. Deputy Duane Jacobson and Raney testified at a suppression hearing.
¶5 Jacobson testified in pertinent part as follows. At around 10:40 p.m. on a Friday, Jacobson received word from dispatch of a citizen tip that a vehicle on U.S. Highway 151 was "traveling all over the road and traveling from one shoulder to the other shoulder." Dispatch further informed Jacobson that the tipster was following the veering driver, and that the tipster had his or her flashers on. Jacobson waited in the median on 151 until a vehicle with flashing lights appeared. Jacobson entered traffic and maneuvered his vehicle so that it was directly in front of the vehicle with the flashers on and trailed the suspect vehicle. The suspect vehicle was driven by Raney. After Jacobson relayed through dispatch that he "did not need to involve" the tipster, he or she continued on his or her way, without interacting with Jacobson.
¶6 Trailing Raney, Deputy Jacobson observed his vehicle "cross the white dotted centerline [of one side of the divided highway], having both of the driver's side tires across into the other lane. It traveled that way for a distance and then moved back into the right lane." Jacobson "then observed the suspect vehicle cross the white dotted centerline again, having almost all four tires into the other lane for a distance and then it moved back into the other lane."
¶7 Jacobson pulled Raney over. Jacobson walked up to the driver's side door, with Raney still seated in the vehicle, and smelled "the moderate odor of intoxicants coming from the vehicle." Jacobson asked Raney if he had been drinking. Raney responded that he had consumed "a couple."
¶8 Shortly thereafter, Raney participated in a field sobriety test at Jacobson's direction. This occurred on a "big paved area" on the roadside, where there was "very minimal" slope to the surface. During the walk-and-turn portion of the test, Raney showed "several clues" indicating impairment and did "[n]ot [do] very well." These clues included starting before being instructed to do so, missing the heel-to-toe more than once, and continuing to walk well past the point where he had been instructed to stop and turn around (taking 25 steps, after being asked to take just 9 steps), so that Jacobson "had to stop him prior to [him] walking into the front of my squad car." During the one-leg-stand portion, there were two clues: raising his arms for balance once and putting a foot down "several times." Jacobson placed Raney under arrest.
¶9 At the suppression hearing, the court viewed a video recording of the encounter between Jacobson and Raney. Raney testified in pertinent part that he took photographs of the area of his encounter with Jacobson shortly after the encounter and three of his photographs were admitted into evidence.
¶10 Raney gave ambiguous testimony at the suppression hearing on two topics: his perception of the slope of the roadside where he performed the field sobriety test and statements Raney allegedly made to Jacobson in connection with the field sobriety test. Raney testified that, when Jacobson asked him to perform the walk-and-turn test, he told Jacobson that he was "tired" and it had "been a long day." Raney separately testified as follows: "[I]t's hard for me to stand straight up anyway because of my legs. And I kept telling him it[']s, I'm struggling here, I can't do this test." Raney's testimony was unclear, but he apparently intended to imply that "the slope" on the roadside "was throwing my balance off" during the field sobriety test.
¶11 After conceding other potential arguments, Raney's attorney persisted with a single argument in favor of suppression, which was that Jacobson lacked probable cause to arrest Raney for operating while intoxicated. Counsel based his single probable-cause-to-arrest argument on the following proposition: Jacobson conducted the field sobriety test on a surface that was not sufficiently level to provide a fair assessment of Raney's ability to perform, and therefore the court was obligated to ignore the results of the field sobriety test, which left too little other evidence of operating while intoxicated to support probable cause.
¶12 The court rejected this argument based in part on the following findings of fact:
I find nothing about this particular location that runs afoul of smooth [and] level in any significant way. It is [at] grade, alongside a four-lane US Highway for sure.... [Y]ou can't really tell it from the photographs [taken by Raney] necessarily, but as Officer Jacobson testified, I have no doubt that there is a crown upon the roadway and that the shoulders slope outward in order to chase water off of the road[,] but it is not significant or visible. The grade itself just isn't a significant grade in terms of the impact it may have on a field sobriety coordination test operating from the downhill side going uphill.
If you are doing it on a side hill there may then, although I'm not sure I'd [say even then], have some impact. But this was a situation where Mr. Raney was operating up the hill as he was performing the field sobriety tests.
Considering these facts as part of the totality of the circumstances-including the evidence of bad driving, Raney's admission of drinking "a couple," the odor of alcohol, and the failed aspects of the field sobriety test-the court concluded that the State had carried its burden to show that Jacobson had probable cause to arrest Raney and denied the suppression motion.
¶13 A jury convicted Raney at trial and Raney appeals.
¶14 First, Raney apparently intends to argue that the traffic stop was unlawful because it was based on an anonymous tip that, he contends, was unreliable, uncorroborated, and consisted of "innocent information." I reject this argument because Raney forfeited it by failing to pursue it at the suppression hearing. See State v. Caban , 210 Wis. 2d 597, 604-08, 563 N.W.2d 501 (1997). I also observe that the argument, which his attorney explicitly abandoned at the suppression hearing, appears to have no merit.
¶15 Second, Raney asserts that his trial counsel was ineffective for failing to pursue a claim based on information that Raney now says he gave to trial counsel at an unidentified time. Specifically, Raney asserts that Jacobson "would not let [Raney] use the bathroom until" Raney consented to a blood draw. I question whether this assertion, at least as stated in his appellate brief, contains sufficient detail to state a claim of ineffective assistance of counsel. But in any case, ineffective assistance of trial counsel claims cannot be raised for the first time on appeal. Rather, the issue must be raised in a post-conviction motion, which, if sufficient, may merit a hearing at which trial counsel would have the opportunity to explain his memory of pertinent facts and his pertinent decision-making process. See State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).
¶16 Third, Raney makes a series of assertions that I will interpret, in his favor, as an argument that matches the single argument that his trial counsel made at the suppression hearing. Specifically, Raney challenges the validity of the field sobriety test in establishing probable cause to arrest. The problem for Raney on this issue is that I review the circuit court's findings of historical fact under the clearly erroneous standard, see State v. Hajicek , 2001 WI 3, ¶12, 240 Wis. 2d 349, 620 N.W.2d 781 (2001), and Raney fails to provide a basis to conclude that the circuit court clearly erred in making the findings that I summarize above. Indeed, the photographs that Raney took and that were admitted into evidence at the suppression hearing, which he now apparently intends to argue undermine the circuit court's findings, in fact support the circuit court's findings.
¶17 Fourth, Raney asserts that the prosecutor "testified" that Raney "swayed during the [field sobriety] test," but that no swaying is evident on the video. Whatever "testimony" of the prosecutor Raney may intend to refer to, and whatever legal argument he may intend to make, Raney's contention is directly undermined by the fact that the jury had a chance to assess the video for itself and to hear related trial testimony from Jacobson that I now briefly summarize. Jacobson testified in pertinent part that, at times during the encounter between the two men, Raney's "upper body, his head[,] was swaying and moving back and forth." "[A]t different times during that interaction, he did some swaying.... I just noted that in my report that I did observe him doing some swaying[, which] the typical person may not do." Raney's trial counsel responded, "Okay. So it's pretty slight; would you say that?" To which Jacobson responded, "Yeah. It was slight."
¶18 Fifth, Raney briefly asserts that an expert witnesses that he called at trial testified that he "might not have been intoxicated at the time of his driving." However, Raney fails to move beyond this bare assertion to even begin to develop at argument that, when the expert's testimony is considered along with all of the other trial evidence, seen in the light most favorable to the State, all of the evidence is "so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." See State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).
¶19 Sixth, without developing a legal argument or explaining how he might have preserved for appeal whatever argument he intends to make, Raney generally complains that Jacobson "carried ... around" the sample of Raney's blood that had been drawn as part of the investigation of this case "until [Jacobson] had time to mail it" to the testing laboratory, with the result that the "sample was not received by the lab" until "almost a week after the sample was taken." I reject whatever argument Raney may intend to make along these lines for at least the following reason: Raney fails even to suggest the existence of authority or evidence that could support a conclusion that delay in testing resulted in the jury receiving inaccurate, incriminating information.
By the Court .-Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(c) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.